**COYLE et al. v. UNITED STATES GYPSUM CO. et al.**

No. 5620—Opinion Filed April 17, 1917.

Rehearing Denied July 10, 1917.

(166 Pac. 394.)

(Syllabus by the Court.)

1. **States—Public Contracts—Abandonment of Work—"Completion"—Statutes.**

Under section 3881, Rev. Laws 1910, requiring public officers contracting for the construction of any public building to take from the contractor a bond for the payment of indebtedness incurred for labor or material furnished in the construction of such building, and section 3882, providing that no action

shall be brought on said bond after six months from the completion of said building, the abandonment of work upon such building by the contractor is not to be regarded as its completion, so as to bar all actions not begun within six months therefrom. In such circumstances the word "completion," as used in the statute, should be construed to mean actual completion—when the building is in fact finished, and not when there was a cessation in the work, even though for a considerable period of time.

### 2. Principal and Surety—Discharge of Surety—Alteration of Plans.

Where a contract for the construction of public buildings of the state, secured by a bond for the payment of all indebtedness incurred for labor or materials as required in section 3881, Rev. Laws 1910, authorized alterations to be made in the work to conform to the recommendations made by designated state officers, upon order of the architects under whose charge the work was being carried on, and which provided that the work added or omitted should be computed by the architects and the amounts so ascertained, added or deducted from the contract price, the sureties, being bound by the terms of their undertaking, are not relieved of liability on account of the failure of the contractor to pay for materials used on said buildings, though changes were made in the original plans and specifications, by which the cost of the buildings was increased.

### 3. Principal and Surety—Public Buildings—Retention of Payment—Fraud of Principal—Liability of Surety.

Where the building contract provided that 15 per cent. of the estimated approximate value of the materials furnished and labor performed in the proper execution of the work should be retained until final settlement, and this was not done, due to the fact that fraudulent statements were rendered by the contractor as to the amount of materials furnished and labor performed, and upon which the architects issued certificates showing the amount due and which recited that 15 per cent. of the balance due under the contract was retained, and where on account of such certificates the state made payments from time to time to the contractor, the sureties, as against the claims of the materialmen and laborers, are not entitled to be relieved of liability on account of the fraud of their principal, for the faithful performance of whose contract, in respect to such claimants, they stand obligated.

Error from Superior Court, Oklahoma County; Edward Dewes Oldfield, Judge.

Action by the United States Gypsum Company against B. M. Daugherty and J. D. Kerby, partners doing business as the Daugherty-Kerby Construction Company, and W. H. Coyle and L. N. Beadles; Oklahoma Portland Cement Company, intervener. From the judgment in favor of plaintiff and intervener,

defendants Coyle and Beadles bring error. Affirmed.

C. G. Horner, for plaintiffs in error.

Keaton, Wells & Johnston, for defendants in error United States Gypsum Co. and Oklahoma Portland Cement Co.

SHARP, C. J. On September 1, 1910, B. M. Daugherty and J. D. Kerby, partners doing business under the firm name of Daugherty-Kerby Construction Company, entered into a contract with the state of Oklahoma, acting through the State Board of Public Affairs, for the erection of certain public buildings for the use of the State School for the Deaf and Dumb at Sulphur, Okla. Following the making of said contract, and on November 11, 1910, the construction company in compliance with the requirements of section 3881, Rev. Laws 1910, made and executed to the state of Oklahoma its bond in the sum of $94,300, conditioned, among other things, that it should pay all indebtedness incurred for labor or material furnished in the erection of the building or buildings named in the contract, and which bond was signed by W. H. Coyle and L. N. Beadles as sureties. During the progress of the work on the buildings, the construction company became indebted to the United States Gypsum Company and to the Oklahoma Portland Cement Company on account of materials purchased of said companies and used in the construction of the buildings. On January 3, 1912, the United States Gypsum Company brought its action against the principal and sureties on the indemnity bond to recover balance on account of said purchases. On December 3, 1912, the Oklahoma Portland Cement Company filed in said action its plea of intervention, whereby it sought to recover of the construction company and of the sureties on said bond the amount due it on account of materials furnished the construction company in the erection of said buildings. The trial resulted in a judgment in favor of the United States Gypsum Company in the sum of $719.26, and for the Oklahoma Portland Cement Company in the sum of $1,690.85, with interest. From the judgment, the sureties, Coyle and Beadles, bring error to this court, relying for a reversal upon the following grounds: (1) The statute of limitations; (2) changes made in the contract; (3) overpayment to the contractor.

Upon the first defense it is insisted that the contractor, on or about February 7, 1911, abandoned the work, and that as plaintiff's action was not brought until during the month of January, 1912, and the intervening petition was not filed until December 3d of

said year, the court erred in not holding that the bar of the statute was complete at the time of the bringing of the action, and the filing of the plea of intervention. It is not claimed that the buildings were completed in the month of February, or within more than six months of the time of the filing of either the petition or plea of intervention. But it is said that as the construction company abandoned its work more than six months before said action was brought, and intervention filed, because of the statute no recovery can be had. The statute, pursuant to which the bond was given, and the action instituted, is found in sections 3881 and 3882, Rev. Laws 1910, relating to public works. Section 3881 provides, in substance, that when any public officer shall, under the laws of the state, enter into a contract exceeding $100 for the purpose of making any public improvement, or constructing any public buildings, or making repairs on the same, such officer shall take from the party contracted with a bond with good and sufficient sureties payable to the state of Oklahoma, in a sum not less than the sum total in the contract, conditioned that the contractor shall pay all indebtedness incurred for labor or material furnished in the work. Section 3882 provides that the bond shall be filed in the office of the clerk of the district court of the county where the public improvement is made or public building is erected, and that any person to whom there is due any sum for labor or material furnished may bring action on said bond for the recovery of said indebtedness, provided that no action shall be brought on said bond after six months from the completion of said public improvements or public buildings.

It has been held, in actions to enforce statutory liens for material furnished or labor performed upon a building, upon which a lien might be filed, that the abandonment of the work by the owner or contractor is to be deemed a completion of it for the purpose of filing mechanics' liens by contractors, materialmen, and laborers. That in such circumstances the laborer or materialman may file his lien without awaiting the final completion of the building. The principle upon which the rule announced is founded is stated in Jones on Liens, vol. 2, sec. 1438, as follows:

"It would be inequitable and unreasonable and contrary to the spirit of the law to hold that parties are absolutely barred of all rights to the lien law, when the work is prematurely stopped or abandoned without fault of such parties."

Liens of the character involved may not in this state be filed and made a lien upon public buildings. Hutchinson v. Krueger, 34 Okla. 23, 124 Pac. 591, 41 L. R. A. (N. S.) 315, Ann. Cas. 1914C, 98; Western Terra Cotta Co. et al. v. Board of Education of the City of Shawnee, 39 Okla. 716, 136 Pac. 595; School Dist. No. 27, Craig County, v. Graham, 45 Okla. 531, 146 Pac. 213. Creditors of the class indicated, in the construction of public buildings, are afforded security by the giving of the statutory bond by the contractor. It is obvious, therefore, that the reason for the rule, authorizing the filing of liens, does not exist when the material is furnished or work done upon a public building or improvement, in which a statutory indemnity bond is required to be, and is in fact given. In such case there is no occasion to treat the abandonment of the work as the completion of the building for the purpose of filing liens, as was the case in Catlin v. Douglass (C. C.) 33 Fed. 569; Shaw v. Stewart, 43 Kan. 572, 23 Pac. 616; Chicago Lumber Co. v. Merrimack River Sav. Bank, 52 Kan. 410, 34 Pac. 1045; Schwartz v. Knight, 74 Cal. 432, 16 Pac. 235, cited and relied upon by the plaintiff in error.

In the absence of any statutory qualification or definition of the term "completion," it should be construed to mean actual completion, dating from the time when the last work was done, and not from the time when there was a cessation in the work, even though for a considerable period of time. 20 A. & E. Enc. Law, 395. Words employed in the statutes are to be understood in their ordinary sense, except where a contrary intention plainly appears. Rev. Laws 1910, sec. 2914. Our statute is very similar to that of Kansas, governing the making of bonds in the construction of public works. The Kansas Statutes (Gen. Stat. 1909, secs. 6256, 6257) provide that no action on the bond shall be brought after six months from the completion of the building; and it was held, in Hull et al. v. Massachusetts Bonding & Ins. Co., 86 Kan. 342, 120 Pac. 544, that the abandonment of the work upon such building by the contractor was not to be regarded as its completion, so as to bar all actions not begun before six months from that time, where the public officers use reasonable diligence in causing the work to be resumed and prosecuted by another contractor. It was said that no reason was apparent to the court why those entitled to sue on the bond might not rely upon the language of the statute, and consider the building as completed when it was actually finished, no matter by whom.

As the actions were brought within six months from the time the buildings were completed, the suspension of the work, or its abandonment by the construction com-

pany, will not serve, on that account, to enable the sureties to escape liability on their undertaking.

It is next urged that because of changes made in the contract, the sureties are relieved of liability. Article III of the contract provided that no alterations should be made in the work, as shown or described by the drawings or specifications, except upon the written order of the architects, and when so made, the value of the work added or omitted should be computed by the architects, and the amount so ascertained should be added to or deducted from the contract price. The contract further provides that the work shall be done in conformity to certain plans and specifications prepared by the architects, on file with the State Board of Public Affairs, except as the proposal and said plans and specifications shall be modified to conform to the recommendations made to the State Board of Public Affairs by the board of regents of said school. The proposal for bids referred to also provides for and contemplates changes in the work to be done. It is unnecessary to refer at greater length to either the contract or the specifications, or to the proposals for bids, as it is obvious that the contract contemplated alterations or changes, when authorized by order of the architects. Such being the case, the sureties on the bond cannot complain because they are bound by the conditions of their bond, which provided that their principal should comply with the terms of its contract. They assumed their obligation with full knowledge that the state through its proper officers, in the erection of the buildings, reserved the right to make alterations and changes. It is not complained that the alterations were not authorized by the architect. In such circumstances, the authorities generally hold that the sureties on the contractor's bond are not relieved of liability because of changes provided for in the contract, the faithful and full performance of which they undertake. McLennan v. Wellington, 48 Kan. 756, 30 Pac. 183; People's Lumber Co. v. Gillard, 136 Cal. 55, 68 Pac. 576; Moore et al. v. Fountain (Miss.) 8 South. 509; Snoqualmi Realty Co. v. Moynihan, 179 Mo. 629, 78 S. W. 1014; Fergus Falls v. Illinois Surety Co., 112 Minn. 462, 128 N. W. 820.

The defense that the contractor was overpaid, and that 15 per cent. of the estimated approximate value of the materials furnished and labor performed in the proper execution of the work was not retained until final settlement, as provided in the contract, is, in view of the judgment of the trial court, untenable. The question of payment and the amount thereof was one of fact, and as there was evidence to show that the necessary deductions were made, it is unnecessary that we should give this contention further consideration. We may, however, say that though the construction company was paid in excess of 85 per cent. of the value of the work done, the sureties would not be discharged of their liability to materialmen or laborers, upon the ground that their position was changed to their prejudice by the conduct of the construction company, due to its fraud in rendering statements made to the construction company cured from the architects, and this regardless of whether the fraud was connived at or participated in by the architects. The payments made by the construction company were on certificates issued by the supervising architects, and which recited that 15 per cent. of the balance due under the contract was retained. Upon these certificates warrants were issued by the State Auditor, which were paid by the State Treasurer. If in fact payments in excess of that authorized under the contract were made, it was because of the fraud practiced upon the state by the construction company, the principal in the bond. Such would constitute a breach by the construction company of its contract, and if the retention money was paid over to it by the state in consequence of such fraud, and against which the sureties had given their undertaking, it follows that the sureties on account thereof are liable. Any other construction would make it possible, indeed, would have the effect of permitting a principal who successfully practiced a fraud and collected moneys to which he was not entitled, thereby to relieve his sureties of liability. Such a view, instead of furnishing protection or indemnity, as intended by the statute, would make the bond in such cases but a snare and delusion to creditors. In Mayor, Aldermen and Burgesses of Kingston-Upon-Hull v. Harding et al., 2 Q. B. 494, 67 L. T. R. 539, the defendants became sureties to the plaintiffs that a contractor would well and truly execute certain drainage works. Power was given to the plaintiffs by their contract with the contractor and defendants to superintend the execution of the works. The contractor and the defendants were not to be released from their liabilities until six months after the plaintiffs' engineer had given a final certificate of the proper completion of the works, and this certificate was to be binding on the plaintiffs. The plaintiffs were to retain a certain proportion of the money due to the contractor for six months after the certificate of final completion had been given. The contractor executed the works, obtained the engineer's certificate, and the plaintiffs

six months later paid over the retention money. Subsequently, in an action by the plaintiffs against the contractor and sureties, the jury found that the work had been fraudulently done, and that the contractor had obtained the engineer's certificate by fraud; that plaintiffs had not properly superintended the work; and that there was no evidence of any willful default or connivance on the part of the engineer. It was held that the passive inaction of the plaintiffs in not exercising their option of superintending the works was no breach of duty toward the sureties; that the final certificate of completion and the payment of the retention money, being obtained by the very kind of acts against which the sureties guaranteed the plaintiffs, could not be relied on as a defense; and that there being no further evidence of the position of the sureties being altered in consequence of the granting of the certificate, the sureties were liable on their contract of suretyship. The sureties (who are sureties for hire) are bound by the terms of their engagement, though the result be disastrous to them.

The judgment of the trial court is affirmed.

HARDY, TURNER, THACKER, and KANE, JJ., concur.