**GREEN CONSTRUCTION CO. et al. v. EMPIRE DISTRICT ELECTRIC CO.**

No. 14248—Opinion Filed Sept. 18, 1923.

1. **Municipal Corporations—Building Contract and Bond — Liability — "Completion" of Work—Abandonment.**

Under section 3881, Revised Laws of Oklahoma, 1910, requiring public officers contracting for the construction of any public buildings to take from the contractor a bond for the payment of the indebtedness incurred for labor and material furnished in the construction of such buildings, and section 3882, providing that "no action shall be brought on said bond after six months from the completion of said public improvements or public buildings," the abandonment of such work on such building or public im-

provements by the contractor is not to be regarded as its completion so as to bar all actions not begun within six months after the completion of the building or public improvements. In such circumstances, the word "completion," as used in the statute, should be construed to mean actual completion—when the building is actually finished, and not when there is a cessation of the work, even though for a considerable period of time.

2. **Trial—Instructions—Refusal— Where Inapplicable.**

The instructions in all cases should run to the facts and to all proper deductions and interpretations of them, and not to questions not presented or covered by the evidence, and it is not error to refuse to give instructions not applicable to facts proved, although such instructions may correctly state an abstract proposition of law.

3. **Principal and Agent—Agency—Question of Fact.**

The apparent authority of an agent is to be gathered from all the facts and circumstances and evidence and is a question of fact for the jury, and the evidence of authority of the agent may be proved by the circumstances, but not the declaration of the agent.

4. **Same—Ratification of Acts—Acceptance of Benefits.**

Where A. contracts to furnish labor and material and complete a contract and B., an employe of A., purchases the material and uses the same in the completion of A.'s contract and A. receives payment for the said material, A. thereby ratifies the act of his employe in making such purchase and is liable for the purchase price of such material.

5. **Appeal and Error—Review—Verdict—Evidence.**

Where there is any competent evidence reasonably tending to support the verdict of the jury, this court will not weigh conflicting evidence, and such finding is conclusive upon this court.

6. **Same—Sufficiency of Instructions.**

Record examined, and held, that the instructions properly state the law applicable to the facts and the verdict, and judgment will not be disturbed on appeal.

(Syllabus by Ruth, C.)

Commissioners' Opinion, Division No. 3.

Error from District Court, Ottawa County; S. C. Fullerton, Judge.

Action by the Empire District Electric Company against the Green Construction Company, a corporation, and the Southern Surety Company, as surety on the statutory bond. From the judgment in favor of the plaintiff, the defendants, Green Construction Company and Southern Surety Company, bring error. Affirmed.

Rittenhouse & Rittenhouse and Geo. T. Webster, for plaintiffs in error.

Chas. R. Nesbitt, for defendant in error.

Opinion by RUTH, C. On April 23, 1921, the Empire District Electric Company, defendant in error, and hereafter designated as plaintiff, filed its petition in the district court for Ottawa county against the Green Construction Company, one of the plaintiffs in error, and hereinafter designated as defendant, and the Southern Surety Company, plaintiff in error, hereinafter designated as surety, in which said petition the plaintiff alleges that on or about the 12th day of December, 1919, the Green Construction Company entered into a contract with the town of Cardin, whereby the said construction company was to extend the water works and sewer plant, pumping machinery and equipment, and erect a steel water tower and tank for said town, and that the Green Construction Company, on the 13th day of December, 1919, executed to the state of Oklahoma a statutory bond, in which said bond the Southern Surety Company became surety for the construction company, and the conditions of the said obligation or bond, after reciting that a certain contract between the said Green Construction Company with the town of Cardin was entered into, provides in the usual form, that in default of the principal to pay for all labor and material necessary to complete the said contract, this bond should remain in full force and effect, said bond being in the sum of $48,160.

The plaintiff further alleges that one S. S. Potter was employed by the Green Construction Company as its purchasing agent, and as such purchasing agent, S. S. Potter, acting for the Green Construction Company, purchased from the plaintiff two K. W. 2200 B. S. Phase transformers, which said transformers were used in the construction of the water works and sewer system in the town of Cardin under the contract aforementioned and the same were so used, and that the contract price for the said transformers was $420 and that the Southern Surety Company was surety on the bond of the Green Construction Company, and that demand had been made upon Green Construction Company for payment for the said transformers, which payment had been refused, and therefore the plaintiff brings this action against the construction company, and the surety company, upon the statutory bond, copy of which bond is set up and made a part of the plaintiff's petition.

In the original petition, the town of Cardin and S. S. Potter were made parties defendant, but suit was dismissed as against the town of Cardin and S. S. Potter prior to the trial of this cause. To this petition, the Southern Surety Company files its answer, denying that the Green Construction Company purchased the transformers from the plaintiff and denying that the construction company owes the plaintiff anything, and further answering alleges that the claim of the plaintiff as against the defendant surety company was barred by the statute of limitation at the time the suit was instituted, for the reason that more than six months had elapsed since the completion of the public improvements involved in the contract relating to the pumping plant, and recites the substance of section 3882, Rev. Laws 1910, wherein it is specifically provided that no action shall be brought on said bond after six months after the completion of said improvements or said public building.

The Green Construction Company, after filing its answer, consisting of a general denial, obtained leave of the court to file its amended answer, in which it admits the execution of the written contract to complete the work according to plans and specifications, but alleges that the contract, plans, and specifications have been lost and that they have no copy of same, but that the said plans and specifications and contract in no manner set forth and describe the said transformers as part of the pumping machinery and that the words "pumping machinery and equipment" were never intended by the contracting parties to comprise or take into consideration the transformers, that they were to be used in reducing the current so that same was capable of being delivered to the town of Cardin.

The construction company further denies that it ever purchased the transformers or that any officer or agent in its employ was ever authorized to purchase said transformers, or that the construction company ever offered to pay for the same.

To the various answers, the plaintiff filed its reply and the cause came on for trial on the 20th day of October, 1922, before a jury in the district court of Ottawa county, and after trial had, the jury returned its verdict in favor of the plaintiff and against the defendants, and upon refusal of the court to grant a new trial, this cause is regularly brought here for review.

The first contention that will be considered by this court is that of the surety company, wherein it is claimed the action was barred by the statute of limitations, by reason of the fact that the same was not brought within six months after the com-

pletion of the contract, the claim being made that the contract was completed about July 20, 1920, and action was not filed until April, 1921.

Section 3881, Rev. Laws 1910, provides that:

"Whenever any public officer shall, under the laws of the state, enter into contract in any sum exceeding $100, with any person or persons for purpose of making any public improvements, or constructing any public buildings. or making repairs on the same, such officer shall take from the party contracted with, a bond with good and sufficient sureties to the state of Oklahoma, in a sum not less than the sum total in the contract, conditioned that such contractor or contractors shall pay all indebtedness incurred for labor or material furnished in the construction of said public building or in making said public improvements."

Section 3882, Rev. Laws 1910, provides:

"Such bond shall be filed in the office of the clerk of the district court of the county in which such public improvement is to be made or such public building is to be erected; and any person to whom there is due any sum for labor or material furnished, as stated in the preceding section, or his assigns, may bring an action on said bond for the recovery of said indebtedness; Provided, that no action shall be brought on said bond after six months from the completion of said public improvements or public buildings."

The surety company relying upon this statute requested the court to instruct the jury that this action was barred by the statute of limitations, in that it was not brought within six months after the completion of the public improvements referred to in the plaintiff's petition. The surety company further requested the court to instruct the jury that the term "completion" of public improvements had been judicially determined by some of our courts, and that as a matter of law, where public improvements are built by a contractor and turned over to a city or municipality and the contractor abandons all further work on them, this act of his is a completion or bringing to an end or termination of his work and this act on his part tolls the statute of limitations. They further requested the court to instruct the jury that the word "completion" as used in the statute is synonymous with such words and phrases as "bringing to a close", "termination", "ending", etc., and if the jury finds the defendant. Green Construction Company, brought its work to a close and abandoned the same. even though it did not complete the public improvements in all their details, then this act on their part tolled the statute of limitations and the six-months' period would start from such act. These instruc-

tions were by the court disallowed and exceptions taken.

We cannot agree with counsel for the defendants that the requested instructions properly state the law as a general proposition, nor do we feel the evidence in this case would warrant the giving of such instructions. In support of their contention that such instruction was proper, counsel for the defendants cite the general proposition laid down in 27 Cyc., p. 13, as follows:

"When the time for the filing of a lien under the statute runs from the completion of the building, the abandonment of work upon the building is to be deemed a completion for the purpose of fixing the time for filing."

"It has been held in actions to enforce statutory liens for material furnished or labor performed on a building upon which a lien might be filed that the abandonment of the work by the owner or contractor is to be deemed a completion of it, for the purpose of filing mechanics' liens by contractors, materialmen and laborers. That in such circumstances the laborer or materialman may file his lien without awaiting the final completion of the building."

The principle upon which this rule announced is founded is stated in Jones on Liens, volume 2, sec. 1438, but this general principle and the adjudicated cases involving this principle are not applicable to the instant case, for liens of the character involved may not in this state be filed and made a lien upon public buildings. Hutchinson v. Krueger, 34 Okla. 23, 124 Pac. 591, 41 L. R. A. ( N. S.) 315; Western Terra Cotta Co. et al. v. Board of Education of the City of Shawnee, 39 Okla. 716, 136 Pac. 595; of Shawnee, 39 Okla. 716, 136 Pac. 595; School Dist. No. 27. Craig County, v. Graham, 45 Okla. 531, 146 Pac. 213.

"Creditors of the class indicated, in the construction of public buildings, are afforded security by the giving of the statutory bond by the contractor. It is obvious, therefore. that the reason for the rule authorizing the filing of liens does not exist when the material is furnished or work done upon a public building or improvement, in which a statutory indemnity bond is required to be, and is in fact given. In such case there is no occasion to treat the abandonment of the work as the completion of the building for the purpose of filing liens, as was the case in Catlin v. Douglas (C. C.) 33 Fed. 569; Shaw .v. Stewart, 43 Kan. 572, 23 Pac. 616; Chicago Lumber Co. v. Merrimack River Sav. Bank. 52 Kan. 410, 34 Pac. 1045; Schwartz v. Knight. 74 Cal. 432, 16 Pac 235." Coyle v. Gypsum Co., 64 Okla. 153, 166 Pac. 396.

The plaintiff contends that the defense. of the statute of limitations is not available to the surety company by way of answer but

should have been taken advantage of by demurrer to the petition, but with this we cannot agree, as the petition nowhere shows upon its face that the action is barred by the statute of limitations and therefore could not be raised by general demurrer and we must look to the evidence introduced at the trial to determine whether or not there was such a "completion" more than six months prior to the filing of this action, as would toll the statute.

We find from an examination of the record that Mr. Sipe, city clerk of the town of Cardin, was called as witness on behalf of the defendants, and testified that "the work had not been completed at the time of the trial to his knowledge, that the septic tank had never been completed, that the sewer system had been put in and the water works put in, and the septic tank was built, but the chlorination part was never completed." Witness further testified that "there was an injunction served against it, and they never went ahead and completed it, and that to his, Sipes', knowledge no final settlement had ever been made with the Green Construction Company and that the job was never finished, never had been completed and stands just as it was." He further testified that the pumping machinery and equipment was provided for and that the transformers were included in the pumping machinery and equipment and the plant would not be complete without them and the transformers were supplied by the Green Construction Company and turned over to the town of Cardin, and that the city had paid for everything up to date, including pumping machinery and equipment and the transformers.

Mr. Moxley, member of the town council of Cardin, called on behalf of the defendants, states that the job was never finished and remains unfinished to this day.

Will Parkinson, mayor and president of the board, called on behalf of the defendants, states that the septic tank has never been finished, and that the Green Construction Company was paid for all the pumping machinery and equipment except enough held back to complete the septic tank, and that the contract was for complete pumping equipment and that the transformers were necessary for the completion of the contract and were installed when the water plant was turned over to the town of Cardin and that the town of Cardin never paid plaintiff for any transformers nor ever ordered any from plaintiff.

Further, on behalf of the defendant, the deposition of S. S. Potter was read, in which he states that he was an employe of the

Green Construction Company during December, 1919, and up to and including May, 1920, and that he was secretary and treasurer of the Green Construction Company and had charge of a certain part of the office work and assisted in securing contracts for the company, but in no part of his testimony does he make mention of the completion of the contract or its abandonment.

It is unfortunate that the contract plans or specifications for the construction of the work were not before the court and it is remarkable that neither the town of Cardin nor the construction company could find any record of this contract or the plans and specifications, for the purpose of determining whether or not said contract or plans and specifications provided for the transformers herein involved. Their loss or the failure to produce the same can in no wise be attributed to the plaintiff in this case and in their absence the jury were compelled to determine from oral evidence what was included in such contract, plans, and specifications, and while the witness, S. S. Potter, who is secretary-treasurer and agent for the Green Construction Company in so far as securing contracts is concerned, testified that the transformers were not included in the contract, nevertheless all the other witnesses for the Green Construction Company, to wit, the mayor, board of trustees, city clerk, and others, testified that the transformers were necessary for the completion of the contract, that the contract could not be completed without such transformers, and that the transformers were installed and the Green Construction Company was paid for the same by the town of Cardin, so in view of this testimony, the jury were the judges of the facts and conditions of the plans and specifications and their findings will not be disturbed by this court.

It further appears in the evidence presented by the defendants that the minutes of the meeting of the board of trustees of the town of Cardin on June 8, 1920, show that a Mr. Coon of the Green Construction Company personally appeared before the board and submitted figures asking for an "advance" of $6,622, which was allowed, and the minutes further show that:

"The chair read a telegram from Green Construction Company, which was as follows: 'Our contract provides for 15 days after completion for acceptance. Please have committee appointed with authority to investigate and accept system with such exceptions as may appear incomplete, so we can get settlement from the town of Picher.'"

The foregoing evidence of Mr. Coon convinces the court that Mr. Coon had authority

to collect money and make agreements with the town of Cardin for the payment of money to the Green Construction Company, and if the Green Construction Company had considered their contract completed, it strikes us very forcibly that they would have asked for a "settlement," or "final settlement," in the amount of $6,622 instead of asking for an "advance" upon their contract price and would have asked for an acceptance of the system as a completed project instead of asking for an investigation and acceptance of the system "with such exceptions as may appear not completed."

This comprises all the evidence with regard to the completion or the abandonment of the contract. It will be noted in Mr. Sipes' testimony that while he makes reference to an injunction, there is no evidence before this court as to who was enjoined or what they were enjoined from doing, and this court is not advised whether the town of Cardin or the construction company were or were not enjoined from completing this plant and we must not permit ourselves to indulge in surmise or conjecture, but must be guided entirely by the record. Nowhere in the record do we find any final settlement made by the town of Cardin for the work done on this contract, nor do we find the construction company asking for a final settlement, but on the contrary, the record discloses the construction company on July 8, 1920, asked for an "advance" of $6,622, which was granted, and we find in the record a request from the Green Construction Company to the town board for the appointment of a committee to investigate the work with the exception of such as is "incomplete." This evidence was submitted to the jury and upon the evidence so submitted, they returned their verdict in favor of the plaintiff and against the defendants, and there was no error in view of this evidence in the court's refusal to give the instructions asked for by the surety company. For while it is true that each party to a controversy is entitled to have his theory of the case presented to the jury by proper instructions, provided the same has been properly pleaded and he has introduced his evidence tending to support such theory (Menton v. Richards, 54 Okla. 418, 153 Pac. 177; Smith v. Maher, 54 Okla. 49, 202 Pac. 321; Campbell v. Thomas-Godfrey L. & L. Co., 81 Okla. 201, 197 Pac. 452; Klein v. Muhlhausen, 83 Okla. 21, 200 Pac. 436), it is nevertheless true that the instructions in all cases should run to the facts and to all proper deductions and interpretations of them, and not to questions not presented or covered by the evidence (New v. Territory, 12 Okla. 172, 70 Pac. 198); and it is not error to refuse to give instructions not applicable to the facts proved, although such instructions may correctly state an abstract proposition of law. Kennedy v. Goodman, 39 Okla. 470, 135 Pac. 936; Shuler v. Collins, 40 Okla. 126, 136 Pac. 752. This principle has been so well and firmly established by this court that further citations upon this point are unnecessary. The only evidence introduced touching the completion or abandonment of the work was introduced by the defendants and each and every witness so introduced testified that the work had never been completed, and that no full settlement had ever been made with the construction company, and there was no evidence before the court or jury of the completion of the work, and if the instruction asked for by the surety company had correctly stated an abstract proposition of law, there was no evidence before the court to warrant the giving of the instruction and we find no error in the court's refusal to give the same. In Coyle et al. v. United States Gypsum Co., 64 Okla. 153, 166 Pac. 396, this court considered the question of the statute of limitations with reference to the completion and therein held:

"Under section 3881, Rev. Laws 1910, requiring public officers contracting for the construction of any public building to take from the contractor a bond for the payment of indebtedness incurred for labor and material furnished in the construction of such building, and section 3882, providing that no action shall be brought on said bond after six months from the completion of said building, the abandonment of work on such building by contractor is not to be regarded as its completion so as to bar all actions not begun before six months from that time. In such circumstances the word 'completion,' as used in the statute, should be construed to be actual completion—when the building is in fact finished, and not when there was a cessation in the work even though for a considerable period of time."

With this holding, we are in perfect accord and the reason for the rule there laid down must be obvious, for as in this case, where the contractor comes in and requests an "advance" and does not treat the advance as a final settlement, and where the minutes of the town board show the committee appointed to inspect the work reports that it is incomplete, those furnishing material are justified in believing there is something yet to be done, and the minutes of the town board not showing there was any final acceptance of the work and final settlement for same, and plaintiff furnishing the transformers was not put upon notice of

the tolling of the statute. It is therefore held there was no error in the court's refusing the instructions and that the statute of limitation was not tolled on the 20th day of July, 1920, being the date on which the construction company asked for an inspection of the work "excepting such as was incomplete."

The next question to be considered by this court is the agency of the employe, S. S. Potter, to purchase the two transformers. The evidence on behalf of the plaintiff discloses that Mr. Horgan was manager of the power sales for the Empire District Electric Company, and that Mr. Potter and some other representative of the Green Construction Company, approached him in his office and asked for quotations on two ten kilowat transformers for the pumping installation at Tar River, and Mr. Potter represented himself as field manager for the Green Construction Company, and that he, Horgan, made quotations on transformers and after an investigation of the credit of the Green Construction Company, they shipped the transformers to the pumping plant of the town of Cardin and charged the same to the Green Construction Company. It is true that an agency cannot be proven by the statement of the agent, but it is equally true as a matter of law that where one represents himself to be the agent of his principal and purchases material which is shipped to his principal, and the principal uses such material and receives pay therefor, the principal thereby ratifies the acts of the employe or agent and is liable for the agreed purchase price of the material.

"Since ratification is equivalent to a prior authority, the original contract, after ratification and by force of the ratification alone, becomes the contract of the party as though it had in the first instance been made by the agent with authority." Beard v. Herndon, 84 Okla. 142, 203 Pac. 226.

"Proof of ratification includes proof of agency and authority and may be made under a complaint charging the ratifying act to be that of the principal or under an averment in the pleading that an agent acted by due authority." Beard v. Herndon, 84 Okla. 142, 203 Pac. 226.

"The question of agency when made an issue in a case is a question of fact to be determined in law actions by the jury and in equity actions by the court, from all the facts and circumstances connected with the transaction, and like any other question of fact may be proved by circumstantial evidence." Reed v. Robinson, 83 Okla. 68, 200 Pac. 773.

Disregarding the evidence of the plaintiff with regard to the representation of S. S. Potter, we will consider the defendants' evidence, and in this behalf we find in the deposition of Mr. Potter, introduced by the defendants, that Potter was the secretary and treasurer of the Green Construction Company and "assisted the company in securing contracts," and while Mr. Potter denies purchasing the transformers from the plaintiff, he deposes that he knew the transformers had been installed and that he supposed they had been provided by the town of Cardin and denied that he was ever in the office of the Empire District Electric Company to obtain quotations on the transformers.

On the other hand, it was testified positively by Mr. Horgan, the manager of the Empire Company, that both Mr. Potter and another representative of the Green Construction Company came to his office for these prices. The defendants thereupon introduced the mayor and president of the board of town trustees, the town clerk and members of the town board, and each and every of the witnesses so offered by the defendant testified that the transformers were installed and were not ordered by anyone connected with the town of Cardin in an official capacity; that the plant would have been incomplete without these transformers, and that they accepted the transformers and paid the Green Construction Company for them along with the pumping apparatus and equipment. We do not find in the record where this statement was ever denied by Mr. Green, who is mentioned as president of the Green Construction Company, or by Mr. Potter, the secretary and treasurer of said company, and the question having been fairly presented to the jury, and the jury having found in favor of the plaintiff and against the defendant, this court will not weigh conflicting evidence for the purpose of disturbing the verdict of the jury.

Disregarding the official position of Mr. Potter as secretary and treasurer of the Green Construction Company, who also assisted in securing contracts for the company, when the Green Construction Company installed these transformers and accepted pay for the same from the town of Cardin, it thereby became liable for the quoted price of such transformers, and will not be heard to say at this time that it did not purchase the same or authorize the purchase of same by any of its employes, and for the reasons above stated, the judgment of the court below will be in all matters affirmed.

By the Court: It is so ordered.