GEORGIA STATE SAVINGS ASSOCIATION OF SAVANNAH, GA., v. ELIAS.

No. 29675. Feb. 16, 1943.

Rehearing Denied March 23, 1943.

*135 P. 2d 36.*

Charles L. Yancey, of Tulsa, H. L. Douglass, and Wm. Roy Kirby, both of Oklahoma City, and Cheatham & Smith, of Bristow, for plaintiff in error.

T. Austin Gavin, of Tulsa, for defendant in error.

DAVISON, J. This is an action for damages for the alleged unjustifiable breach of a contract to make a loan of money on real estate. It was instituted in the district court of Creek county on the 5th day of June, 1937, by Emil K. Elias, as plaintiff, against the Georgia State Savings Association of Savannah, Ga.

Issues were joined and the cause was tried to a jury in May of 1939, resulting in a verdict and judgment for the plaintiff in the sum of $2,500. Timely motion for a new trial was thereafter filed and overruled, and the defendant has appealed, appearing herein as plaintiff in error. Our continued reference to the parties will be by their trial court designation.

The substance of the defendant's position is that under the proof it was entitled to prevail as a matter of law, and in the alternative it asserts that if the evidence was sufficient the instructions to the jury were improper, vague, and indefinite. It is undisputed that the defendant company entered into a contract whereby it agreed to loan to the plaintiff the sum of $4,500 for the purpose of financing the construction of a building to be erected on real estate in the city of Bristow, the loan to be secured by a mortgage

228

on real estate as improved by the building. However, the defendant company takes the position that its contract obligated it to make the loan only in the event a business building suitable for ordinary business should be erected upon the premises and then only when and if plans and specifications for the building had been submitted to and approved by the company.

It is undisputed that a building such as would be used for general business purpose was not erected, but, on the contrary, a building was constructed for the purpose of being used for a motion picture business which required a special type of construction. It was also established that plans and specifications were not submitted to the company. It was, however, proven that an agent of the company knew of the type of building which was being constructed upon the premises and may have encouraged its erection. There can be no doubt that the loan company in dealing with its own money could exercise its own judgment with respect to the security which it would require to insure the payment thereof. However, the parties are agreed that it may and in this case did, prior to the actual making of a loan, enter into a contract with the borrower by which it obligated itself to subsequently and under stipulated conditions make a loan.

Did the company in this case by its conduct obligate itself in such a way as to be liable for damages for its subsequent refusal to consummate a loan on the real estate when a building specially adapted for use as a motion picture show was erected? In answering this question we must review the evidence in a light most favorable to the plaintiff.

First let us examine the contract, which was in writing (except insofar as it may have been altered through the acts or knowledge of the company's agent, a contention which will be subsequently discussed). The interpretation of a written contract is primarily a problem for the court as distinguished from the jury. McCarty v. Lumry, 170

Okla. 156, 38 P. 2d 937; Smith v. First National Bank of Chandler, 114 Okla. 293, 245 P. 653; Brown v. Coppadge, 54 Okla. 88, 153 P. 817.

According to plaintiff's petition and the exhibits thereto attached, plaintiff executed a written application in question and answer form for the loan in question on August 3, 1936. The application, which is attached to plaintiff's petition as a portion thereof, is rather long and need not be copied in this opinion. However, certain features which constitute the basis of dispute between the parties are sufficiently vital to require specific mention.

Plaintiff's request was for a $4,500 loan. The purpose as recited in the application was "rebuilding an old building into a new brick 25 x 80." The estimated cost was $5,250, which included the cost of a basement estimated at $750. The application stated that the building was to be used "as grocery store by tenant." A rough sketch of the proposed building was attached to the application. In addition to the foregoing information the application contained voluminous specific detailed information respecting the location of the property, its status with reference to delinquent taxes and other details which might be useful to the lending corporation in exercising its judgment as to whether the loan should be made. It also contained the following provision:

"That this loan, if made, will be made by The Georgia State Savings Association of Savannah, Georgia, and accepted by me on the terms and conditions to be stipulated by said Association. I agree to comply with the same and to accept the loan on the date it is allowed me by the Board of Directors of said Association, . . ."

The application was transmitted to the defendant, Georgia State Savings Association, at its office in Savannah, Ga., by Mr. McDonald, who received it from Mr. West.

In connection with the application it is appropriate to observe at this point that the copy of same was not attached

to plaintiff's petition at the commencement of this action, its absence being excused by the allegation that the same was not in the possession of the plaintiff. Later, on motion of the defendant, the plaintiff procured the same and attached the copy as a part of his pleading without alleging any existing inaccuracy therein.

In connection with the type of building to be constructed on the property as depicted by the application a peculiar condition of the proof is reflected by the record.

The application, as we have noted, contained a statement that the proposed building was to be · used as a "grocery store by tenant," a character of use which in itself depicts a type of building suitable for various business uses and negatives the idea of a building adaptable to use for a picture show.

The plaintiff, however, after attaching a copy of the application to his petition, without asking a reformation or questioning its accuracy in his· pleading, offered to prove that the answer last above noted was not in the application when he signed it. The trial court first excluded the testimony, but later it was admitted.

If the questioned answer were the only part of the application .which depicted the type of building to be created, a disputed question of fact on the point might be said to exist.

However, the record reflects and the plaintiff admits in his testimony that, when the application was prepared, he submitted to Mr. West a rough sketch (which had been prepared for him by one Mr. Cundy) of the building, which was attached to the application and transmitted to the company. The sketch, consisting of two sheets of paper, was produced in evidence. While it does not indicate the building was to be used as a grocery store, it does clearly indicate a building suitable for that or any other common business use by reason of its type and wholly unsuitable for⁾ use as a theatre.

Thus, regardless of any dispute as to the presence of the question in the application, it is unquestionable that plaintiff by the written application agreed to supply a certain type of building as security.

For reasons which will be more fully discussed hereafter, we have concluded that the type of building to be erected as contemplated by the application constitutes a very important factor in the case.

In response to the application the defendant company replied by letter from which we quote the following pertinent excerpts:

"Savannah, Ga.
August 28, 1936

"Mr. Emil K. Elias,
"Bristow, Okla.

"Dear Sir:

"We are in receipt through our Mr. McDonald of your application for a loan of Forty-five Hundred Dollars ($4500.00) on our 84 months plan, with certain real estate lying in the town of Bristow, and described therein as security.

"Conditional upon . . . (conditions omitted); we will take pleasure in letting you have a loan of forty-five hundred dollars ($4500.00) on our 84 months plan, provided you show marketable title to the property free of all encumbrances except any enumerated in the application and remove the same; secure the Association properly;

"And provided also you improve the property by removing present frame building and erecting a one story, one room brick building with basement, built from foundation up on one side; one side party wall agreement obtaining. The said building to have concrete foundation and composition room with adequate city water and sewerage facilities and connected up with city water and sewer mains at a cost of not less than $5250.00 judiciously expended. The building to be built according to plans, specifications and contract to be sent for our inspection and approval, and to be complete in all respects and painted where necessary with at least 2 coats of good serviceable paint.

"We will furnish the money on completion of the said improvements to the satisfaction of our Inspector, . . .

"And provided also the transaction is closed within 90 days time. . . .

"Yours very truly,
"(Signed) J. F. Buckner"

Subsequently, upon hearing that the plaintiff was erecting a building specially constructed as a motion picture theatre, the defendant company advised the plaintiff by letter under date of September 18, 1936:

"Mr. E. K. Elias,
"c/o Acme Food Store
"Bristow, Okla.

"Dear Sir:

"We are in receipt of advice from our fieldman, Mr. McDonald, that you have put him on notice in connection with your proposed loan, that you have decided to erect a building suitable for use as a moving picture theatre instead of for use for any commercial purpose and as we do not make loans on special propositions such as moving picture theatres, we will be unable to go ahead with handling your proposition.

"We have always found it necessary to confine ourselves to residential property of reasonable value and business property that is suitable for the average run of business.

"We are glad to note that you have been able to arrange such a favorable rental proposition and trust you will have no trouble whatever in getting the amount of the loan you desire elsewhere.

"Yours very truly,
"(Signed) J. F. Buckner
"Vice-President"

In its answer the defendant asserted in justification of its refusal to make the loan, the alleged erecting of a type of building different from that upon which it had agreed to loan the money.

Let us view the contract as determined by the communications above outlined.

It is elementary law that every contract embraces an offer and an acceptance; and it is equally well settled that a qualified acceptance constitutes a new proposal. 15 O. S. 1941 § 71; Foster v. West Publishing Co., 77 Okla. 114, 186 P. 1083.

In this case the application of the borrower constituted an offer or proposal by the plaintiff. The acceptance thereof as contained in the letter of the company was conditional and qualified, and therefore constituted a new offer. This new offer did not eliminate from consideration the terms of the original offer, but, insofar as the new conditions or qualifications were not inconsistent therewith, by reference to the application and by necessary implication, it adopted them as a part of the new offer. Thus the original application as well as the new proposal are both important in determining the contractual understanding which existed between the parties.

Since the parties are agreed that a contract to make a loan came into existence, they are necessarily in accord that the new proposal as contained in the letter was accepted. An examination of the record discloses that this acceptance was by letter written to the defendant company by the plaintiff.

It may be assumed that the borrower did not by his application obligate himself to keep his building rented for a grocery store. The important feature of the description of the proposed use was that it indicated a type of building suitable for use as a grocery store or other commercial enterprise of a similar character, one which could be readily adapted to various businesses. The same type of building was indicated by the sketch attached to the application. In other words, it indicated a type of property to be constructed. There is a very definite difference, from a business standpoint, between such a building and one adapted to motion picture show. Certain features of construction render the latter inappropriate for most other businesses without material alterations.

The plans in accordance with which

the theatre building was constructed were produced in evidence. In general they depict such special features as a sloping floor, a balcony, an arrangement of booths, lounges, and other small rooms in the front of the building, and other features common to theatre buildings which render them unsuitable for other uses without extensive alterations.

Obviously, then, the building constructed was not only for a different use than that contemplated by the contracting parties, it was in many of its major aspects of construction an entirely different type of building. It was not the character of building which the company had agreed to accept as security for its loan. The borrower has not furnished, and did not offer to furnish, security of the type contracted for. In fact, he placed himself in a position where he couldn't do so without costly alterations of the building constructed.

It is thus apparent that the defendant company was not by virtue of the written communications between the plaintiff and itself obligated to make the contemplated loan. Its obligation, if any, must rest upon a different obligation assumed for the company by and through an authorized agent.

In this connection plaintiff relies upon his negotiations with Mr. McDonald and Mr. West, and contends that acting in behalf of the company they or one of them authorized the change of plans and granted the company's consent thereto. Were they authorized to bind the company by such consent?

The existence of the relationship of principal and agent as well as the extent of authority which the agent may exercise can of course be proven by the sworn testimony of an agent as distinguished from his declarations made out of court (Citizens' Bank of Gans et al. v. Mabray, 90 Okla. 63, 215 P. 1067; Munn v. Mid-Continent Motor Securities Co., 126 Okla. 241, 259 P. 249); but the declarations or acts of the purported agent made out of court (with certain exceptions not here involved, as for instance when such declarations constitute a part of the res gestae) are without probative force to establish the existence or extent of the agency. Garland v. Frazier, 177 Okla. 493, 61 P. 2d 188; Garrett v. Reinhart, 169 Okla. 249, 36 P. 2d 884; Pierce Oil Corporation v. Myers, 117 Okla. 161, 245 P. 863; Skelly Oil Co. v. Pruitt and McCrory, 94 Okla. 232, 221 P. 709; Green Construction Co. v. Empire Dist. Electric Co., 92 Okla. 127, 218 P. 1074.

In the case at bar both Mr. H. H. McDonald and L. C. West appeared as witnesses. They testified they were not authorized to approve loans or the security for loans for the defendant company, although they did represent the company in a more limited capacity.

Mr. McDonald testified in substance that in connection with the making of loans it was his duty to "inspect the property, put an appraisal on it, investigate the applicant, and report his findings on both the property and moral risk of the applicant to the home office" and that he had no greater or other authority.

The gist of Mr. West's testimony upon the point is expressed in the following excerpt from the record:

"A. I take applications from people and endeavor to place these loans with a number of different companies. The Georgia State is one of them. Q. You are not an agent of the Georgia State? A. No, sir."

These witnesses also, in effect, denied making any statement or doing any act in connection with the transaction in excess of their authority or representing to the plaintiff by act or word that their authority exceeded the limits above mentioned.

This last-mentioned feature of their testimony is at variance with that of the plaintiff, who in substance asserts that they purported to assume authority in behalf of the company to authorize a change in the nature of the security to be given for the payment of the loan. Such express or implied representation as may have been made by word or act

of the agents could not extend their authority beyond its actual limits. It was in the nature of declarations out of court by an alleged agent, which as we have noted, as under our prior decisions, wanting in probative force to establish the plaintiff's position.

The plaintiff also relies upon a sign displayed in the office of Mr. West which he says described Mr. West either as a "loan agent" or loan broker for the company, and upon a business card used by Mr. McDonald which described him as inspector of loans for the company. However, it is undisputed that plaintiff knew by his own individual experience in dealing with the defendant company that it was the company at its home office that approved the security, not Mr. West or Mr. McDonald. The plaintiff had previously submitted his application and knew it was transmitted to the home office for consideration. He had been notified of the conditional acceptance by direct communication from the company's office at Savannah. He himself had acceded to the conditional acceptance by direct communication to the company. In the case of Home Owners' Loan Corporation v. Thornburgh et al., 187 Okla. 699, 106 P. 2d 511, we said in paragraph 2 of the syllabus:

"One who deals with an agent, knowing that he is clothed with a circumscribed authority and that his act transcends his powers, cannot hold his principal on the theory of apparent authority."

Our review of the record convinces us that plaintiff falls within the class excluded from holding the principal upon the theory of apparent authority of the asserted agents. There is no evidence reasonably tending to support the view that actual authority to authorize a change in the security contracted for had been conferred on either Mr. McDonald or Mr. West. It follows that no issue of fact was presented which entitled the plaintiff to have his cause submitted to a jury. The possibility that additional evidence on the question of agency may exist and be produced at a subsequent trial makes it proper that we reverse and remand the same.

Our view of the cause makes it unnecessary that we consider the question of the effect of failure to furnish plans and specifications.

Reversed and remanded.

CORN, C.J., GIBSON, V.C.J., and RILEY, OSBORN, and HURST, JJ., concur. BAYLESS, WELCH, and ARNOLD, JJ., concur in conclusion.