## OKMULGEE COAL CO. v. HINTON et al.

No. 10662—Opinion Filed March 27, 1923.

Rehearing Denied Sept. 18, 1923.

(Syllabus.)

1. Parties—Statutory Requirement.

Section 4681, Rev. Laws 1910, provides that every action must be prosecuted in the name of the real party in interest.

2. Same—"Real Party in Interest."

The authorities hold that the real party in interest is the person legally entitled to the proceeds of the claim in litigation.

3. Sales—Breach of Contract to Deliver Coal—Parties Entitled to Sue.

From an examination of the contract and the allegations of the petition, we are unable to perceive any such privity between the Leonard Company and the Okmulgee Coal Company as to entitle the former to participate in this case as a party plaintiff.

4. Corporations—Ratification of Agent's Acts—Acceptance of Benefits.

A corporation which voluntarily accepts the profits of an act done by one assuming,

although without authority, to be its agent ratifies his act, and takes it as its own, with all its burdens, as well as its benefits.

### 5. Same—Knowledge of Facts—Necessity.

The general rule above stated applies only where the corporation through its proper officers has knowledge of the facts, and not where it receives and retains the benefits of the unauthorized act or contract in ignorance of the facts, and repudiates the act or contract when it acquires knowledge thereof.

### 6. Same—Lack of Knowledge of Facts.

In our judgment, the evidence tending to show ratification was defective, in that it failed to show that the defendant furnished the few cars of coal it was shown it furnished, with full knowledge that the form of the guaranty was changed.

### 7. Same—Reversal of Judgment.

For the reasons stated, the judgment of the trial court is reversed, with directions to proceed in accordance with the views herein expressed.

Error from Superior Court, Okmulgee County; R. E. Simpson, Judge.

Action by J. W. Hinton, doing business as the Hinton Company, and the J. H. Leonard Coal Company against the Okmulgee Coal Company for damages for breach of contract. Judgment for plaintiffs, and defendant brings error. Reversed, with directions.

Hummer & Foster and L. L. Cowley, for plaintiff in error.

C. J. Pinkston, for defendants in error.

KANE, J. This was an action for damages for breach of contract commenced by the defendant in error, plaintiff below, against the plaintiff in error, defendant below.

In the written contract involved, the defendant, the Okmulgee Coal Company, is called "the operator," and the plaintiff, J. W. Hinton, doing business as the Hinton Company, is called the "selling company." By the terms of the contract, the operator agreed for the period of one year to sell and deliver to the seller four cars per day of standard Blackstone mine run coal at a price of $2.25 per ton.

It was alleged in the petition that the contract was breached by the failure of the operator to sell and deliver to the seller coal in the quantities and at the times prescribed in the contract.

The allegations of the petition under which the J. H Leonard Company was made party plaintiff are as follows:

The plaintiff the J. H Leonard Company alleges and states that it has an interest in said contract by reason of the fact that it, with the knowledge and oral consent of the defendant, guaranteed the payment of all amounts due the defendant under said contract that might be shipped to the plaintiff the J. H. Leonard Coal Company. And it further alleges and states that by and with the oral consent of the defendant herein, it had an oral agreement with the plaintiff J. W. Hinton to sell all of said coal mentioned in said contract for the said J. W. Hinton for a stated remuneration.

After a general and special demurrer to plaintifffs' petition was overruled, the defendant answered:

(1) By a general denial of each and every material allegation contained in the petition of the plaintiffs, except such as are hereinafter specifically admitted.

(2) The defendant specifically denies that it executed the contract sued upon in plaintiffs' petition.

(3) That defendant specifically denied that it had any agreement whatever with the plaintiff J. H. Leonard Coal Company.

(4) That it was understood and agreed by and between the parties that the contract alleged to be breached was not to become effective until some one satisfactory to the defendant would sign the guaranty indorsed thereon for that purpose; that the said J. W. Hinton agreed to obtain the execution of said guaranty, and stated at the time that one Walter R. Wilson would execute said guaranty; that he failed to secure the signature of said Walter R. Wilson or any one else.

The reply was a general denial.

Upon trial to a jury of the issues thus joined, there was a joint verdict in favor of both plaintiffs for $15,500, upon which judgment was duly entered, to reverse which this proceeding in error was commenced.

The assignments of error we deem it necessary to notice are briefly summarized by counsel for defendant in their brief under two propositions, as follows:

(1) The plaintiffs' petition failed to state a cause of action in favor of the J. H. Leonard Coal Company, and defendant's demurrer to the petition should have been sustained as to the Leonard Company.

(2) The evidence introduced by the plaintiffs was wholly insufficient to constitute a ratification of the contract by the Okmulgee Coal Company.

We thnk the first assignment of error is well taken. Section 4681, Rev. Laws 1910, provides that:

"Every action must be prosecuted in the name of the real party in interest, except as otherwise provided in this article, but this action shall not be deemed to authorize the assignment of a thing in action, not arising out of the contract."

An examination of the foregoing brief summary of the contents of the contract and of the pleadings, and particularly the allegations of the petition under which the J. H. Leonard Coal Company claims and was awarded joint recovery, discloses that there was no privity of contract between the Leonard Coal Company and the defendant. The authorities hold that the real party in interest is the person legally entitled to the proceeds of the claim in litigation. 13 C. J. 701. The same authority states that one of the reasons for the rule that privity of contract is necessary to an action founded on a breach of contract is that otherwise a man's responsibility for not carrying out his agreement with another would have no limit; there would be no bounds to actions if the ill effect of the failure of a man to perform his agreement could be followed down the chain of results to the final effect.

The allegations of the petition hereinbefore set out, as we view it, amount to this: The defendant, the Okmulgee Coal Company, obligated itself by a contract to sell the plaintiff Hinton a certain quantity of coal. Thereafter the plaintiff the Leonard Company entered into a contract with Hinton to receive and sell the coal for the latter at a stipulated price; that the Okmulgee Coal Company having breached its contract with Hinton thereby prevented him from carrying out his contract with the Leonard Company. Therefore, they say, the defendant is jointly liable to both plaintiffs. The trial court having taken this view of the matter, the result is that, though the defendant made no contract with the Leonard Company, never promised to sell it any coal or to deliver any to it, and though the Leonard Company never promised this defendant to buy any coal or receive any coal, yet there is now a joint judgment in its favor for $15,500.

From an examination of the contract and the allegations of the petition, we are unable to perceive any such privity between the Leonard Company and the Okmulgee Coal Company as would entitle the former to participate in this case as a party plaintiff.

The question presented for review under the second assignment of error arises substantially as follows:

The parties agree that, on account of certain informalities in its execution, the written contract sued upon was not originally binding upon the defendant company; the contention of the plaintiff being that by acting and receiving benefits under it the company ratified the previously unauthorized contract. There is no contention that there was any express ratification, so the question in its last analysis is this: Was there, under the facts in this case, an implied ratification?

The parties also concede that the general rule on ratification is correctly stated in J. I. Case Threshing Machine Co. 1. Lyons & Co., 40 Okla. 356, 138 Pac. 107, as follows:

"One who voluntarily accepts the profits of an act done by one assuming, although without authority, to be his agent ratifies his act, and takes it as his own, with all its burdens, as well as its benefits."

And they also agree that the general rule above stated "applies only where the corporation through its proper officers has knowledge of the facts, and not where it receives and retains the benefits of the unauthorized act or contract in ignorance of the facts, and repudiates the act or contract when it acquires knowledge thereof." 14 C. J. 390.

Now let us examine the question presented for review in the light of these concessions.

The contract sued upon bears the date of May 1, 1917. The evidence shows that on that date the contract in its incomplete and unenforceable form was handed to Mr. Hinton with the understanding that it was not to become effective until some one satisfactory to the defendant would sign the guaranty, indorsed thereon in blank as follows: "I, the undersigned, do hereby guarantee the payment of all amounts due under the above contract." Thereafter Hinton procured J. H. Leonard Coal Company to sign the guaranty, the latter company changing the form thereof before signing by adding thereto the following words: "on all coal shipments made to the J. H. Leonard Coal Company." On the 25th day of May, 1917, Mr. Hinton enclosed the contract in an envelope and mailed the same to one of the officers of the Okmulgee Coal Company, together with the following letter:

"Attached hereto is a contract duly executed by the Hinton Company and guar-

anteed by th J. H. Leonard Company. I am returning the original to you for your files and ask that you give the duplicate to me, duly signed, for my files."

At the trial Mr. Hinton testified that he never mentioned the change in the form of the guaranty and no mention of it was made in the letter above set out. There was undisputed testimony to the effect that the contract with the guaranty thus changed was first seen by Mr. Thornburg, president and one of the directors of the defendant company, about June 25th, and by Mr. Read, another director, between July 6th and 10th. There is no evidence that Mr. Wigton, the remaining director, ever saw the contract after its return, or that any formal action was ever taken in the matter of approving or accepting the contract in its changed form. There is some evidence to the effect that the defendant agreed to accept the J. H. Leonard Coal Company as guarantor, but there is no direct evidence whatever to the effect that the defendant authorized or knew of the change in the form of the guaranty.

The following are the facts which in connection with the foregoing circumstances it is claimed amount to a ratification of the contract: During the month of May, 14 cars of coal were shipped, which was 90 cars less than provided in the written contract; in the month of June, 7 cars were shipped, which was 97 cars less than was provided in the contract; in the month of July, 3 cars were shipped, which was 97 cars less than was provided in the contract, and in the month of August, 1 car was shipped, which was 107 cars less than was provided in the contract. All of these shipments were settled for at the price of $2.25 per ton, the price stipulated in the contract.

Now, in a law case, such as this is, the jury probably would have been justified in finding from this evidence that the defendant voluntarily accepted benefit under this written contract. But, as we have seen, this was not enough. It was also necessary to show to the satisfaction of the jury that the coal was shipped with full knowledge of all the material facts.

"No doctrine," says the Supreme Court of the United States, in Owings v. Hull, 9 Pet. 607, "is better settled, both upon principle and authority, than this: that the ratification of an act of an agent previously unauthorized must, in order to bind the principal, be with full knowledge of all the material facts. If the material facts be either suppressed or unknown, the ratification is treated as invalid because founded in mistake or fraud."

In our judgment, the evidence tending to show ratification was defective in that it failed to show that the defendant furnished the few cars of coal it was shown it furnished with full knowledge that the form of the guaranty was changed.

There is some evidence tending to show that the corporation consented that the guaranty could be signed by the Leonard Company, but there is no evidence whatever in the record tending to show that the defendant waived the guaranty or that it agreed or knew that the form of the guaranty had been changed. From the summary of the evidence hereinbefore set out, it appears that the contract was turned over to Hinton, for the purpose of procuring the guaranty to be signed by one Walter Wilson in the form hereinbefore stated. While Mr. Hinton in his testimony states that the defendant agreed that the Leonard Company would be satisfactory as guarantor, he admits that no mention was ever made either orally or in writting of the change made by the Leonard Company in the form of the guaranty. It must be remembered that the instrument sued on herein is in writing, and the plaintiff seeks to prove ratification and breach by substantially the same acts of the defendant. In these circumstances, we must construe the contract as it appears on the printed page, and hold the parties bound by its specific terms.

In our judgment, the guaranty as changed is wholly meaningless when construed in connection with the contract. The contract provides that the defendant shall sell and deliver to J. W. Hinton a certain number of cars of coal at a certain price per ton. The guaranty as changed by the Leonard Company secures the payment of all amounts due on the above contract on all coal shipments made to the J. H. Leonard Coal Company. As defendant made no contract to sell or ship any coal to the J. H. Leonard Coal Company, it is obvious that the guaranty, construed according to the plain terms, is not germane to the contract sued upon.

As we have stated before, there is some conflict in the evidence as to whether Mr. Thornburg, president of the company, agreed that the guaranty might be signed by the J. H. Leonard Company, but there is no controversy whatever as to the agreement to have the guaranty executed in the form in which it appeared on the contract when it was delivered to Mr. Hinton.

According to the evidence, it was the failure of Hinton to procure a satisfactory guaranty as agreed upon that finally resulted in the shipments of coal being stopped. We gather this from an excerpt from the evidence of Mr. Thornburgh, president of the defendant company, contained in the brief of counsel for defendant in error as follows:

"Q. You did permit Col. Wigton to sell to Jim at $2.25 when he was selling it to others at $3.?

"A. I told him to fill Jim's contract.

"Q. What was your idea of doing that?

"A. That was the price agreed on, the only thing he didn't get the coal was because he didn't give any security.

"Q. But you instructed the Colonel to furnish him coal at $2.25 per ton, up to the time the price went up to $3.25, isn't that right?

"A. The last car he got was in the early part of August.

"Q. About the middle?

"A. No.

"Q. At that time the market price of your mine run coal was about $3.25.

"A. I imagine so; I don't know; just listening to them talk about it.

"Q. You knew he was furnishing it to Jim at $2.25?

"A. I wanted him to have it, if it had gone to $10, if he had furnished security."

In our judgment, the defendant company was justified in discontinuing the shipments upon discovery that the guaranty was not executed as required by the agreement with him.

Of course, the defendant could have accepted the guaranty in its changed form, or it could have waived it entirely, but there is no evidence in the record from which we are able to say that the defendant intended to do this, and this point does not seem to have been sufficiently stressed by the trial court in instructing the jury in the trial of the cause. This being an action for damages for the breach of an executory contract which originally was unenforceable for want of proper execution, it must be made clear to the jury by explicit instruction that where it is sought to charge a corporation with the ratification of an unauthorized act of an agent, in order to bind the principal, the corporation must act with full knowledge of all the material facts.

For the reasons stated, the judgment of the trial court is reversed, with directions to proceed in accordance with the views herein expressed.

JOHNSON, C. J., and McNEILL, KENNAMER, NICHOLSON, and Cochran, JJ., concur.