## MUNN et al. v. MID-CONTINENT MOTOR SECURITIES CO.

No. 17225. Opinion Filed Sept. 13, 1927.

(Syllabus.)

1. **Appeal and Error—Usury—Proceedings on Second Trial—Defensive Evidence Under General Denial.**

Where a defendant in a usury case pleads only by general denial, and at the time demurs to the evidence of plaintiff, and such demurrer is sustained, and on appeal this court reviews the case, with a statement that defendant should be required to allege as a defense and prove in its defense and show and give a lawful reason for receiving certain money, and defendant before the second trial amends his answer by pleading both a general denial and an accord and satisfaction. he is not precluded from introducing any evidence that would be competent under the general denial.

2. **Usury—Action to Recover—Under General Denial Proof that Defendant Acted as Agent of Plaintiff in Loan.**

In a suit to recover alleged usurious interest reserved, defendant will be permitted under a general denial to prove that he did not lend the money to plaintiff, and that in the transaction he acted as agent for plaintiff in procuring the loan from a third party.

3. **Principal and Agent—Proof of Agency by Agent Himself, but not by his Declarations to Third Parties.**

Proof of agency may not be made by proving declarations of the agent to third parties, but may be made by the evidence of the agent himself, as to the existence of such agency, and by proof by him of the transaction between himself and his principal by which the agency was created.

Commissioners' Opinion, Division No. 2.

Error from District Court, Tulsa County; Z. I. J. Holt, Judge.

Action by Maude B. Munn and M. J. Munn against Mid-Continent Motor Securities Company for the recovery of alleged usurious interest. Judgment for defendant, and plaintiffs appeal. Affirmed.

W. T. Hunt, for plaintiffs in error.

Biddison & Ladner, for defendant in error.

DIFFENDAFFER, C. This action was brought for the recovery of the sum of $4,585.50 and attorneys' fees, and costs.

Plaintiffs allege that, on the 6th day of April, 1920, they were indebted to defendant in the sum of $23,500, a balance due on seven promissory notes; that defendant agreed to extend payment of said balance, conditioned that plaintiffs execute five notes, four for $5.000 each and one for $3,500, all bearing 10 per cent. interest and due May 6, 1920, payable to one Paul R. Warner; that plaintiffs were not indebted to Warner, but executed the notes to him at the request of defendant, who was at all times the real owner and holder thereof; that said notes were secured by chattel mortgage on 13 3-ton F. W. D. trucks; that before the maturity of the notes, one of the trucks was sold for $2,750, which was paid to defendant and credit given therefor on one of the notes; that plaintiffs failed to pay the notes at maturity, but that on or about the 15th day of July, 1920, plaintiffs sold the remaining 12 trucks for $34,300; that under the direction of defendant, the purchaser drew drafts for said sum payable to defendant, and that defendant received said sum, less $40.25 exchange; that defendant was entitled to and did return $50 expense for loading the trucks, and the further sum of $238.50 premium paid on insurance on the trucks; that thereafter, and on the 23rd day of July, 1920, after repeated demands made by plaintiffs for a settlement, defendant paid plaintiffs the sum of $10,928.50, and held and reserved the sum of $2,292.75, as interest; that defendant refused to pay plaintiffs any sum whatever, or to settle with plaintiffs until plaintiffs signed a certain receipt, whereby plaintiffs acknowledged the receipt of the $10,928.50, approved, authorized, and consented to the deduction from the $34,259.75 collected, the sum of $23,331.25, the same being the amount of the remaining indebtedness due together with expense and attorney's fee; that the trucks had been sold without expense to defendant; that of said amount so withheld, $2 292.75 was interest and was in excess of the lawful rate of interest and was usurious; that plaintiff thereafter made written demand upon defendant for the sum of $4,585.50, being double the amount of interest so retained by defendant, and prayed for judgment for said sum.

The defendant answered by general denial. Trial was had and a demurrer sustained to plaintiffs' evidence, and appeal was taken to the Supreme Court, where the case was reversed, and remanded for new trial. Munn et al. v. Mid-Continent Motor Securities Company, 100 Okla. 105, 228 Pac. 150. After the case was remanded, defendant filed an amended answer consisting of a general denial, and further alleged a full and complete settlement between the parties, and that when defendant paid to plaintiffs the $10,928.50 on the 23rd day of July, 1920, it was in consideration of the release of each party by the other of all obligations whatsoever, and the release of defendant by plaintiffs of any obligation to the plaintiffs to pay them any money claimed by them to be in defendant's hands belonging to plaintiff, which was intended as a settlement and an accord and satisfaction by the parties.

Plaintiffs replied by general denial. A jury was waived and the case tried to the court, where judgment was entered for defendant, and plaintiffs again appeal.

The plaintiffs set out five assignments of error. First, error in overruling motion for new trial; second, in admitting evidence on the part of defendant; third, refusing and ruling out legal testimony offered by plaintiffs; fourth, error in rendering judgment for defendant; and, fifth, error in refusing to render judgment for plaintiff.

As stated heretofore this is the second appeal in this case, and plaintiffs earnestly contend that the law of this case is settled by the former opinion. We think that the opinion in the former appeal was correct, and if the record was the same in this appeal as in the former one, we would not hesitate to again reverse the case.

As stated in the former appeal, the only plea of defendant was a general denial, and the court sustained a demurrer to plaintiff's evidence. In the former trial plaintiffs proved that they had obtained the money through defendant; that the notes were made to Warner, and that Warner had no financial interest in the transaction, and that defendant had retained the sum of $1.701.96 in excess of legal interest on the notes. The defendant made no explanation why this sum was retained and held by it, and offered no evidence whatever, and relied wholly upon the receipt taken at the time of the alleged settlement, as being a legal release, and urged on appeal that the transaction at the time the receipt was given

amounted to an accord and satisfaction. The court held that it was clear from the record as it stood at that time that it was not the intention of the plaintiffs to accept the amount paid in satisfaction of the amount claimed to be due, and as there was no plea of accord and satisfaction in defendant's answer, and as there was no proof offered on its general denial, it was clear that the defendant had retained and held, reserved and charged, a greater rate for the use of money than 10 per cent. per annum, and in an amount far beyond the statutory contract rate. And further held that there was sufficient evidence to put the defendant upon its proof, and that the trial court should have compelled defendant to allege as a defense, and prove in its defense and show and give, a lawful reason whereby this $1,701.96 was reserved, this being the amount of excess over the legal rate of interest.

We think the former appeal settled the law of this case to this extent: First, that the evidence adduced by plaintiff was sufficient to carry the case to the jury, and if unexplained, to sustain the judgment asked for; second, that the receipt required by defendant and signed by plaintiff was of itself insufficient to show an accord and saisfaction; and third, that if defendant relied on the defense of accord and satisfaction it was necessary to plead same as an affirmative defense.

At the second trial the evidence of plaintiff was substantially the same as at the former trial. except that it went somewhat more into detail as to the original transaction, and on cross-examination went more into detail as to who actually loaned the money. but plaintiff insisted that he only knew the defendant company in the deal.

The defendant. however, under its general denial, and its plea of accord and satisfaction, was permitted to show that in fact it did not lend the $23,500 to plaintiffs, but that the defendant merely acted as agent for the plaintiffs in procuring the loan from the Mid-West Motor Securities Company of Kansas City, and that defendant was unable to procure the loan for plaintiffs, without the indorsement of defendant, and that plaintiffs had agreed with defendant that for its services in procuring the loan, and for its indorsement of the notes, plaintiffs would pay them a commission of 3½ per cent. per month; that the loan was procured for a period of 30 days only, and that when the notes became due plaintiffs were unable to pay, and that the Mid-West Company, from whom the loan

was procured, insisted on prompt payment, but that defendant had induced the Mid-West Company to not foreclose their mortgage by agreeing to give the Mid-West Company the commission which plaintiffs had agreed to pay them for procuring the loan, and that when the trucks were finally sold, defendant had the draft made payable to it. for the reason that defendant was indorser on the notes and liable to the Mid-West Company, and they wanted to be assured that the money would be applied on the notes, and that when the notes were paid, defendant did retain the $1,701.96, as the commission due it for procuring the loan, and had paid same to the Mid-West Company, so defendant did not in fact receive anything at all, either interest or commission.

Defendant offered no evidence on its plea of accord and satisfaction. All the evidence of defendant as to its acting as agent for plaintiffs in procuring the loan was objected to, and in their briefs plaintiffs say that the principal error complained of in this appeal is the admission of this evidence, and insist that when in the former appeal this court said:

"There is sufficient evidence in this case to put the defendant upon his proof, * * * and the court should have compelled it to allege as a defense and prove, in its defense and show and give a lawful reason whereby such amount was reserved"

—that it meant the defendant, before it could prove such agency, must plead same as an affirmative defense. They urge that the former decision settles the law of this case in this: First, receipt cannot be taken as an accord and satisfaction of plaintiffs' claim; second, that under the pleadings and evidence in the former trial before the lower court the plea of usury was sustained; and, third, that the court should have compelled it to allege as a defense and prove, in its defense, some lawful reason whereby such amount was reserved.

The question then arises whether the defense proved was sufficiently pleaded, that is, Could defendant prove under its general denial that it did not lend the money to plaintiffs but acted as their agent in procuring the loan, and for such services and in consideration of indorsing plaintiffs' notes, had agreed with plaintiffs that their compensation should be 3½ per cent. per month?

We do not think that this court in its former opinion intended to say that defendant should be required to plead anything as an affirmative defense that it could have proved under its general denial. The de-

fense of accord and satisfaction is an affirmative defense, and must be pleaded as such before proof thereof can be made. The defendant by its amendment pleaded this defense, but offered no evidence in support thereof. Proof that defendant did not in fact lend the money to plaintiffs, but acted as their agent in procuring the loan from the Mid-West Company, and that plaintiffs had agreed to give it 3½ per cent. per month, as compensation for procuring the loan, and its endorsement of the notes, we think, was admissible under its general denial.

In 21 R. C. L. par. 123, p. 566, it is said:

"The well-established rule is that the general denial puts in issue every fact included within the allegations of the petition which the plaintiff is bound to prove in order to recover."

And in the same volume, paragraph 125, it is said:

"In general, special matters of defense should be specially pleaded, but a defendant cannot be required to plead specially facts which amount to no more than a denial of the plaintiff's averments; or facts which it will only become material for the defendant to prove for the purpose of rebutting evidence introduced by the plaintiff."

In 2 Corpus Juris, p. 917, the rule is stated:

"Under the general issue or a general denial evidence is admissible to prove agency on the part of defendant, in order to disprove his individual liability, to show the terms of the alleged agency, or that the contract laid in the complaint is not the contract of the parties."

See, also, Gray v. Taylor (Ind.) 28 N. E. 220, and Scone v. Amos (Minn.) 35 N. W. 575.

It was necessary before plaintiffs could recover that they prove: First, that they borrowed the money from defendant; and, second, that defendant took, received, reserved, or charged a greater rate of interest than 10 per cent. per annum.

It was certainly proper that defendant be allowed to prove that it did not lend the money to plaintiffs, and in doing so prove that some one other than defendants did lend the money, and incidentally prove the facts and conditions under which the loan was made. And this we think proper, under its general denial, though as an incident thereto, it become necessary to prove that defendant acted as agent for plaintiffs.

The second proposition urged by plaintiffs is that the court erred in the admission of evidence of agency, and insists that the evidence of one Park, who was an officer of defendant company, that his company acted as agent for plaintiffs, was incompetent to prove such agency, and cites R. P. Smith & Son & Co. v. Raines Dry Goods Co., 37 Okla. 39, 130 Pac. 133, wherein this court said:

"The fact that one purports to act as the agent for another, stating at the time that he is the other's agent, is not of itself sufficient evidence upon which to submit the question of agency to the jury."

And also Stapleton Motor Sales Co. et al. v. Coley, 107 Okla. 269, 232 Pac. 28, where the court in the second paragraph of the syllabus said:

"Agency cannot be proved against another by evidence of the declarations of an agent, and where one purports to act as agent for another, that fact of itself is not sufficient evidence upon which to submit the question of agency to the jury."

This is the well-established rule in this state, as to declarations made to a third party by one claiming to be the agent of another, as such declarations are clearly within the rule of hearsay evidence, and therefore not admissible.

A different situation arises when the party claiming to be the agent is produced in court and testifies under oath as to the agency and to the transaction by which such agency is created.

In Whitcomb v. Oller et al., 41 Okla. 331, 137 Pac. 709, it is held:

"Agency and the extent of authority may be proved by the testimony, though not by the declarations of the agent."

And in the opinion it is said:

"* * * It was not sought to introduce the admissions or declarations of the agent as to the fact of the agency. The agent himself was the witness testifying, and it was competent for him to give testimony whether the relation existed or not, and its extent, if it, in fact did exist."

It appears from the record, and is admitted by all the parties, that sometime in January, 1920, about three months prior to the date of the notes in question, plaintiffs had employed the defendant to procure a loan of $36,000 for them from the Commonwealth National Bank of Kansas City, Mo., for which they had paid defendant a commission of $1,800. It was this loan upon which there remained a balance of $23,500 unpaid on the 6th day of April, 1920, that the loan in question was made to obtain the money with which to pay this balance.

That portion of the evidence of Mr. Parks as to the transaction between his company and Munn, by which it was sought to show the agency of defendant in procuring the loan, was as follows:

"Q. On or about April 6th, what was the first you heard of the matter? A. Prior to April 6th, I talked with Mr. Munn relative to the payment of the balance due on the $36.000. Q. Had there been something paid? A. Yes, sir. Q. And where were you when you talked with Mr. Munn about it? A. At my office, on the telephone. Q. What did he say? A. That they were selling the trucks as fast as they could; that he had no additional money with which to liquidate the balance; that the trucks had —that this deal had to wash itself. Q. What did you say? A. That this was entirely contrary to the statements made by Mr. Williams in December and January. Q. Go on. What else did you say? A. Well, he left me considerably up in the air as to the payment on the balance due of $36.000. Q. Mr. Park, did you communicate that matter then to the Commonwealth? A. Yes, sir. Q. What position did it take about the matter? A. I went to Kansas City prior to maturity of these notes, or just about at the maturity, and they were absolutely iron-clad and hard boiled. I had assured them it would be paid at maturity and they wanted it. There was absolutely no chance to extend. Q. What did you do? A. I made the rounds of the banks I had originally called on in an endeavor to refinance. Q. Before you went to Kansas City, did you have any discussion with the Munns about the subject of handling this matter, extending it, or elsewhere for it? A. Just a general one. Q. With whom? A. Mr. Munn said it was absolutely impossible for him to pay these notes and I said, 'Well, I will go to Kansas City and see whether the Commonwealth will renew it.' I assured them so positively in January it would be paid at maturity I had my doubts. Q. Did you say anything then? A. At his request, that I would use what power I had in an endeavor to refinance for him. Q. Then, did you return from Kansas City? Yes, sir. Q. Did you communicate with Mr. Munn on your return? A. Yes, sir. Q. How? A. By phone. Q. Who was present? A. Fitzpatrick was present at practically every conversation. Q. Well, on the first conversation was he present after you returned from Kansas City? A. Yes, sir. Q. Who called? You or Munn? A. My recollection is Fitzpatrick called and started the conversation and turned the phone over to me. Q. What did you say to Munn? A. I told him—asked him if he had made any progress in the liquidation of the $23,-500 balance and he said no, they had not

sold any trucks. I asked him if he had made any further attempt to borrow the money elsewhere. He had not, for he knew he could not get it, so contrary to the statements made by Mr. Williams in January, I told him that I had interviewed several banks in Kansas City to no avail; that the Commonwealth demanded payment and he said that was too bad, he was just as sorry as I was. I then told him, I had had a possible chance in Kansas City; that I trusted he would be able to close his to—make arrangements for the liquidation of the amount, but if he could not I had a chance in Kansas City. Q. What did he say? A. He sure was tickled and wanted me to report progress. Q. What did you do then? A. I waited about a day or two, then phoned Mid-West Motor Securities Company in Kansas City, whom I had interviewed while there, that I was going to have to take advantage of their offer to Mr. Munn. Q. Did you then communicate to Mr. Munn? A. Yes, sir. Q. What arrangement was made then between you and Munn upon the subject? A. I told him this money was going to come high; that the Mid-Continent had been put to considerable trouble and expense; that we had made two trips to Kansas City and one to New York; that I thought I could get the money for him at 3½ per cent, per month, to which he was quite agreeable."

We think this evidence was clearly competent, and if believed by the court, which was evidently the case, was sufficient to prove the agency as contended for by defendant.

Complaint is also made that the judgment is not supported by the evidence, and is contrary thereto, but this court has often held that where a case is tried to a court without a jury this court will not reverse the trial court on its finding of facts, where there is any competent evidence reasonably tending to support the judgment, and will not weigh the evidence where there is a conflict therein, but will give to the findings of facts the same weight as the verdict of a jury.

There being no substantial error, the judgment should be affirmed.

BENNETT, HALL, HERR, and JEFFREY, Commissioners, concur.

By the Court: It is so ordered.

Note.—See under (1) 4 C. J. p. 1108, §3090. (2) 2 C. J. p. 917, §643. (3) 2 C. J. pp. 933, 934, §689; p. 935, §692; 21 R. C. L. p. 821; 3 R. C. L. Supp. p. 1192; 4 R. C. L. Supp. 1431; 5 R. C. L. Supp. p. 1173: 6 R. C. L. Supp. p. 1285.