## PIERCE OIL CORPORATION v. MYERS.

No. 15871—Opinion Filed Feb. 9, 1926.

Rehearing Denied April 13, 1926.

**1. Evidence—Admissions of Alleged Agent —Proof of Agency Necessary.**

Statements made in the absence of defendant by a person who was not shown to be defendant's agent cannot bind defendant and are objectionable as hearsay testimony. Admissions of an agent, in order to be admissible against the principal, must be made as agent, and while he is acting for the principal within his authority; and it must first be shown by competent evidence that such admissions were made in and as a part of the agent's performance of his duties and within the scope of his authority.

**2. Principal and Agent—Burden of Proof of Agency.**

The law itself makes no presumption of agency, and the burden of proving agency, including not only the fact of its existence, but its nature and extent, rests ordinarily upon the party who alleges it.

**2. Same—Acts and Declarations of Alleged Agent Inadmissible.**

Neither the declarations nor acts of a person can be given in evidence to prove that he is the agent of another.

(Syllabus by Maxey, C.)

Commissioners' Opinion, Division No. 1.

Error from District Court, Tulsa County; George C. Crump, Assigned Judge.

Action by Oral G. Myers against Pierce Oil Corporation for damages for injuries received in automobile collision. Judgment for plaintiff, and defendant brings error. Reversed.

West, Sherman & Davidson, for plaintiff in error.

Fulling & Harbison, for defendant in error.

Opinion by MAXEY, C. Oral G. Myers instituted this suit in the district court of Tulsa county, Okla., to recover damages for injuries to his person and to his Ford car, as a result of a collision between his car and an automobile driven by Ernest Slater on the highway between Tulsa and Sand Springs in Tulsa county, Okla. Slater was not made a party to the suit. The liability of the Pierce Oil Corporation is predicated on the allegations that at the time of the collision, the company had in its employment, as superintendent of its refinery, one Ernest Slater, and that said Slater was in the employment and in the line of his duty for the defendant in driving an automobile east along said public highway, and as he approached the point where plaintiff was driving his automobile, the defendant's servant and employe drove said car for the defendant at a highly dangerous and reckless rate of speed, and carelessly and negligently ran said car into said plaintiff's car. The plaintiff claims damages to his car in the sum of $299, and damages to his person, for loss of time, doctor and hospital bills, in the sum of $2,700. The defendant answered by general denial and a plea of contributory negligence, duly verified.

The principal ground urged for reversal consists of the admitting in evidence of certain remarks and admissions that Slater made at the time of the accident. There is no evidence as to who was the owner of the automobile which Slater was driving, other than the testimony of Ed Dorrs, an employe of the defendant in its refinery. He testified that he thought Slater bought the car himself, and that after Slater left the company's employment he never saw the car again; and the testimony of F. M. Huff, another employe of the defendant, who testified that when Slater left the company's employment he took the car with him. There was no testimony offered to prove that the car belonged to the defendant. There were several witnesses who testified to conversations had with Slater as to why he was going to Tulsa. Some of the witnesses testified that Slater said he was taking some samples of oil, which he had in his possession in the automobile, for the purpose of shipping them somewhere. This testimony was evidently offered to show that Slater, at the time of the accident, was engaged in the business of the defendant company, and that he was acting within the general scope of his employment. The defendant objected to the introduction of all this testimony as to what Slater said. When the objection was interposed to this testimony, it was in the following form:

"We object to any statement and declaration made by Mr. Slater." At this point the jury was withdrawn, and the admissibility of the testimony was argued in the absence of the jury, and the ruling of the court thereon can best be stated by quoting what the court said:

"The Court: I am letting this evidence in under the assumption that it will be proven that Mr. Slater was in the employment of the Pierce Oil Corporation at that time, and that he was on a mission of work for them. Now, I think that proof will have to be made. If he was on a pleasure drive, on his own responsibility, then, of course, the corporation would not be responsible for his conduct. Mr. Fulling: I think that is correct. The Court: I am assuming that he was in the performance of his duties for the defendant, and that at the time of the accident or alleged negligence on the part of the defendant, and I am letting that testimony in with the understanding it will be followed up with other proof. Will you show me a decision that at the time of the injury the declaration of the party complained of is not a part of the res gestae? Can you show that he is the agent, Mr. Fulling? Mr. Fulling: Yes, sir; we will show that. The Court: Then, I will let it in with the understanding that it will be followed up. The contention is that the statements made by Mr. Slater immediately after the accident or injury complained of, or at any time, in relation to the accident or injury, as to whether it be negligence, are not binding on the defendant. Unless that is followed up, of course it would not bind the defendant. The court holds that unless the plaintiff establishes that at the time of the injury complained of Mr. Slater was working for the defendant company, and was on a mission or duty at that time for the defendant, which must be established by proof independent of his declarations, his statements or declarations will not be competent. If this is shown, however, the court holds that the statements of Mr. Slater are competent, but they are incompetent until the agency has been established, and if that is not shown, that he was the agent of the company, a demurrer will be sustained to the evidence."

There were three other witnesses who testified that they were riding in the car with Mr. Slater, and two of them, who were sitting on the back seat, state that they observed the box in the car, and that Slater told them it contained samples of oil which he was taking to the depot at Tulsa to send away somewhere, they did not remember where. At the close of the testimony, the defendant demurred to plaintiff's testimony on the ground that it did not establish a cause of action against the defendant. This demurrer was overruled, and the defendant

introduced its testimony, and at the close of all the testimony, the defendant entered its motion to the court to direct the jury to return a verdict for the plaintiff in error, the defendant in said cause. This motion was also overruled, and the court instructed the jury. The only objection urged in the instructions of the court is stated in the 4th assignment of error, which is as follows.

"The trial court committed error in submitting to the jury the question as to whether the said Ernest Slater was, at the time of the injury complained of, acting as the agent of the plaintiff in error and acting within the scope of his employment, there being no sufficient legal or competent evidence to prove the fact of such agency."

It is the contention of the defendant, plaintiff in error, that it was error to admit evidence of what Slater said about his mission to Tulsa. It was contended in this connection that we do not have here a case of an employe driving an employer's car, in which possibly, according to some authorities, a presumption might be indulged that the servant was acting in the scope of his employment and upon the business of his master. There is no room for that presumption in this case, for the reason that Slater was the superintendent of the defendant's refinery, and there is no evidence that driving a car to Tulsa after the refinery had closed, that is, after working hours, for any purpose, was a part of his duty as superintendent. There was some attempt made to show that Louise Derrick, a telegraph operator for the company and a passenger in Slater's car at the time, was carrying the company's mail for Tulsa, but Louise Derrick herself denies that she was carrying any mail for the company, and states that it is not her duty or practice to do so. Rasback's testimony that she was carrying the mail was not based upon his own knowledge, and there was no evidence that it was a part of Slater's duty, as superintendent, to carry passengers in his car or to carry mail, but he was simply carrying the three persons riding in his car as a matter of accommodation to them.

It is further urged by plaintiff in error that in order for plaintiff to recover against the defendant, Pierce Oil Corporation, he was bound to prove, as he had to allege, and did allege, that Slater's alleged negligence in driving a car at a high rate of speed was attributable to the company, because at the time of the accident he was engaged in the business of the company as its servant and agent, and was acting within the scope of his employment. The question in this case is whether the evidence of-

PIERCE OIL CORPORATION V. MYERS

fered by the plaintiff in support of that claim should have been admitted over the objection of the defendant, Pierce Oil Corporation. The whole case, as presented by counsel in their brief, is directed to the alleged error of admitting the testimony as to Slater's declaration over the objection of the defendant.

We think the trial court erred in admitting testimony over the objection of the defendant, as to the statements made by Slater at the time and after the accident. The only object in this testimony was to try to show that Slater was on a mission for the defendant, Pierce Oil Corporation. There is nothing, in our judgment, in any of the statements that witnesses testified to Slater making that in any way tends to show that he was on a mission for the defendant, Pierce Oil Corporation. The evidence shows to our mind that the automobile in which Slater was riding was his automobile and not the automobile of defendant, Pierce Oil Corporation. He had taken in the automobile three of the employes of the refinery, and was taking them in his automobile on his way to Tulsa as a matter of accommodation. Slater was the superintendent of the refinery, and it was the rule to close the refinery at five o'clock in the afternoon, and Slater and the other employes went to their homes, and were performing no duty for the master after the refinery was closed. There is some testimony to the effect that Slater had some sample bottles of oil in a box in the automobile, and one witness testified that Slater said the reason he was driving so fast was that he wanted to get to the depot and ship these samples out. There is not even any testimony that the samples of oil belonged to the defendant, and that the defendant had directed Slater to take them to the depot and ship them out. It appears from the ruling of the trial court, when he passed on the objection to these statements that it was claimed Slater made, that the court held that before they could make that testimony competent they would have to show that Slater was acting in the line of his duty and under the instructions of the defendant, Pierce Oil Corporation. There was no attempt after the court's ruling to connect Slater and the remarks he made with the defendant in any way. The rule would have been to require the defendant to first show that Slater was acting for the defendant before permitting these remarks to go to the jury. We are not unmindful that these remarks might have been admissible, in connection with other facts and circumstances, to establish the fact that he was in the line of his duty at the time the

injury occurred, but they were certainly not admissible without in some way connecting them with the duty he was performing for the defendant.

This question has been before the court in a number of cases from this court. The case of Chickasha Cotton Oil Co. v. Lamb & Tyner, 28 Okla. 275, 114 Pac. 333, was a case by doctors to recover for medical services rendered to one Belle Lindley, an employe of the company. One of the defenses was that the company had not ordered the services of the plaintiffs. Over the objection of the defendant, plaintiffs were permitted to testify that the messenger who called them stated that he had been sent by the company's president and manager. It was held that such testimony was inadmissible, the court saying:

"Statements made in the absence of defendant by this person, who was not shown to be defendant's agent, cannot bind defendant and are objectionable as hearsay testimony. The best evidence as to who sent the messenger for plaintiffs would have been the messenger's testimony. * * * Admissions of an agent, in order to be admissible against the principal, must be made as agent, and while he is acting for the principal within his authority: and it must first be shown by competent evidence that such admissions were made in and as a part of the agent's performance of his duties and within the scope of his authority."

Again in the case of St. Louis & S. F. Ry. Co. v. Brown (Kan.) 45 Pac. 118, it appears that during the trial of the case the plaintiff was permitted to introduce testimony concerning statements made by a man named Baker concerning an offer to settle Brown's claim against the company for $115. The witness testified that Baker had settled claims with other persons. There was no testimony tending to show that Baker was the agent of the company, other than that he stated to the witnesses that he was claim agent, and the fact that he went to others beside Brown to settle losses. It was held, quoting from the syllabus:

"Neither the declarations nor acts of a person can be given in evidence to prove that he is the agent of another.

"Admissions, declarations, or acts of a person claiming to be agent of another cannot bind or prejudice the rights of the alleged principal in the absence of competent evidence tending to prove that agency."

To the same effect is the case of McDonald v. Strawn, 78 Okla. 271, 190 Pac. 558, where it was held:

"The law itself makes no presumption of agency, and the burden of proving agency,

including not only the fact of its existence. but its nature and extent, rests ordinarily upon the party who alleges it.

"The fact of agency being in issue, evidence of the alleged agent's own declarations, statements or admissions. as distinguished from his sworn testimony as a witness, is not admissible against an alleged principal, for the purpose of establishing, enlarging, or renewing his authority, nor can his authority be established by showing that he acted as agent, or that he claimed to have the powers which he assumed to exercise."

These cases above cited are followed in the case of Thorp Oil & Specialty Co. v. Home Oil Refining Co., 79 Okla. 225, 192 Pac. 573; Oklahoma Automobile Co. v. Benner, 70 Okla. 261, 174 Pac. 567; R. P. Smith & Sons v. Raines Dry Goods Co., 37 Okla. 39, 130 Pac. 133. We could cite a number of cases from other jurisdictions to the same effect, but the foregoing cases from this court are decisive of the question involved in this case and settle the question as to the admissibility of the evidence objected to by the defendant; that is, the remarks made by Slater as to what his mission was. The only theory upon which the defendant can be held for the damages sustained by the plaintiff in the accident complained of is the doctrine of respondeat superior. There must be something more to hold the principal than such remarks as it is claimed Slater made in regard to the accident and his mission. Slater was not made a party to the suit, and while the remarks made by him might have been proper if he had been a party, as affecting a liability as to him, yet they certainly do not fix the liability on the defendant.

After a thorough examination of the whole case. we think that the judgment of the trial court should be reversed, and the case remanded for a new trial. to be conducted in accordance with the views herein expressed.

By the Court: It is so ordered.

Note.—See under (1) 22 C. J. pp. 219 § 189· 369 § 440: 376 § 441. (2) 2 C. J. p. 919 § 647. 923. § 662. (3) 2 C. J. pp. 935 § 692: 945 § 709.