A. C. BRIDGES, Everett Bridges, and Barney Bridges, co-partners, d/b/a B. and B. Construction Company, Plaintiffs in Error,

v.

C. F. RUDDER and W. H. Rudder, Defendants in Error.

No. 36287.

Supreme Court of Oklahoma.

Feb. 23, 1955.

Rehearing Denied April 6, 1955.

Champion & Wallace, by Wilson Wallace, Ardmore, for plaintiffs in error.

Hegel Branch, H. B. Lockett, Duncan, for defendants in error.

ARNOLD, Justice.

C. F. Rudder and W. H. Rudder brought this action in the District Court of Stephens County against various defendants to recover damage to livestock allegedly caused by the drinking of waters polluted by the operations of defendants on an oil and gas lease. An application to make "A. C. Bridges, Everett Bridges, and Barney Bridges doing business as B. and B. Construction Company" parties defendant was filed in which it was alleged that said parties together with the defendants named in plaintiff's petition committed the acts as complained of therein. An order was made making them additional parties defendant. "Separate answer of A. C. Bridges, Everett Bridges, and Barney Bridges, d/b/a B. & B. Construction Company, and A. C. Bridges, Everett Bridges, and Barney Bridges" was filed denying every material allegation contained in plaintiff's petition and amended petition. This answer was signed by said defendants' attorneys and was not verified.

Pertinent to the issues here raised plaintiffs' evidence reasonably tends to show that an oil well was drilled upon land immediately adjacent to plaintiffs' pasture; that this well was situated near a small ravine which empties into Sandy Bear Creek, which creek traverses plaintiffs' pasture and is the sole source of drinking water for their cattle; that in drilling the well the drilling contractor had constructed two large pits, from one of which drilling mud was circulated into the hole and out into the other pit; that the drilling contractor completed his operations early in December and moved his equipment off the location, leaving these two sludge pits unfilled; that plaintiffs made demand upon the drilling contractor to fill the pits; that their request was referred to the operator of the lease who asked the drilling contractor to find someone to do the work; that the drilling contractor called Barney Bridges, told him of the job to be done, and suggested that he call the lease operator; that plaintiffs went to the lease location on December 29, 1950, and found a man with a caterpillar filling the pits; that this man burst the dikes of the pits and allowed the contents of the pits to drain into the adjacent ravine and from there into Sandy Bear Creek; that plaintiffs made inquiry of this man as to the owner of the caterpillar and were informed that it was owned by B and B Construction Company, and later plaintiffs saw the caterpillar at the yard of said construction company; that plaintiffs then made an investigation to determine the owners of B and B Construction Company and learned that it was owned by three brothers, Barney Bridges, A. C. Bridges, and Everett Bridges; that plaintiffs asked A. C. Bridges if his company had done the work of filling in the pits but he denied it; that at the time the sludge pits were broken plaintiffs had 66 cattle in a feeding pen on full feed in preparation for the market and 66 other cattle in the pasture; that all of the cattle, 132 head in all, drank the water polluted by said drilling mud in Sandy Bear Creek and became ill, losing their hair; that 4 of the cattle died, ten cows aborted their calves, and two bulls were rendered ineffective for service for over a year; that the 4 cows that died were worth a total of $580;

that the remaining cattle were eventually sold in March, 1951, at which time they had suffered a weight loss from drinking the polluted water of 200 pounds each; that the cattle market from the time the water became polluted and the cows became sick, which was in December, 1950, until the time the cows were sold, in March, 1951, remained steady and did not fluctuate; that immediately before becoming sick the cows would have brought 40 cents per pound and averaged 700 pounds each, or a value of $280 each; that when the cows were sold they brought only 29 to 30 cents per pound and plaintiffs received an average price of $192 per cow, or a loss per cow of $88; evidence as to the loss sustained by reason of the aborting cows and the unfitness of the bulls was also introduced. After plaintiffs rested they were allowed, over the objection of defendants, to reopen and introduce testimony to the effect that Barney Bridges, one of the defendants, stated to two witnesses who were standing outside the courtroom on the day of the trial waiting to be called that he was the man who did the work of filling up the sludge pits.

At the close of plaintiffs' evidence the defendants demurred to the evidence and moved for a directed verdict which was overruled by the court. Defendants refused to put on any evidence and the court thereupon submitted the cause to the jury, which returned a verdict in favor of plaintiffs in the sum of $4,200; judgment was entered in accordance with the verdict. From order overruling motion for new trial defendant appeals.

Defendants first contend that no competent evidence connected Everett Bridges, A. C. Bridges and Barney Bridges doing business as B and B Construction Company or any of their agents acting within the scope of their agency with the alleged tort; that there is no evidence establishing the existence of the partnership of B and B Construction Company. In support of this proposition they cite Pierce Oil Corporation v. Myers, 117 Okl. 161, 245 P. 863 to the effect that statements made in the absence of defendant by a person who is not shown to be defendant's agent cannot bind defendant and is hearsay testimony. They also urge

that under the rule laid down in Massman Construction Co. v. Chisholm, 193 Okl. 473, 145 P.2d 207, in order to hold a person responsible under the doctrine of respondeat superior for the torts of another it must be made to appear by competent evidence that the relationship of principal and agent or of master and servant existed between the two at the time the tort was committed and that the tortious act was committed in the course of the employment of the servant.

■ Defendants were sued as "A. C. Bridges, Everett Bridges, and Barney Bridges doing business as B. and B. Construction Company." This was sufficient to constitute an allegation that such defendants were a partnership. They answered as "A. C. Bridges, Everett Bridges, and Barney Bridges, doing business as B. & B. Construction Company" and did not deny the existence of the partnership under oath, as required by 12 O.S.1951 § 286. In their motion for new trial, petition in error, and briefs filed herein they style themselves as a co-partnership. They therefore admitted the existence of the partnership and plaintiffs were not required to make proof of the fact.

■ As to their contention that no competent evidence connected any agent of defendants acting within the scope of his agency with the tortious act, plaintiffs introduced evidence that Barney Bridges, one of the partners and a named defendant, stated to two witnesses that he was the man who did the work of filling up the sludge pits. This evidence was objected to by defendants on the grounds that it was incompetent, irrelevant, immaterial and hearsay. They make no argument here that it was incompetent, irrelevant, immaterial, or hearsay. (Statements, whether under oath or not, made by a party in interest relative to the matter in controversy, are admissible when offered by the other party to the suit. Whitehead v. Jefferson, 51 Okl. 42, 151 P. 681; Aldred v. Ray, 54 Okl. 154, 153 P. 664, 7 A.L.R. 1; Harry v. Hertzler, 185 Okl. 151, 90 P.2d 656; see also 20 Am.Jur. Evidence, Sec. 544. The admissions of a party to a suit are not hearsay because the law holds everyone responsible for what he says to the extent that his sayings may be used as

evidence against himself of the truth of what he has said. The rule is different, however, when the statements of a party other than a party to a suit are admitted in evidence under an exception to the hearsay rule; in such instance the declarant must be shown to be unavailable as a witness.) The evidence was clearly competent and material and goes to the very question in controversy. The evidence that Barney Bridges did the work is uncontroverted. The evidence also shows that the work was done with a caterpillar belonging to the partnership and that the partnership was engaged in the construction business and such work as was here done. It is axiomatic that a partner acting within the scope of the partnership business is an agent of the partnership. No question is raised here as to the sufficiency of the instructions to the jury on the point. No exceptions were taken to any of the instructions given by the court and none on the point were requested by defendants. Under the above evidence and under the court's instructions the jury could reasonably have drawn the inference that the defendant and partner, who by his own admission did the work, was acting within the scope of the partnership business at the time.

Defendants also contend that there was no competent evidence introduced upon which the jury could without speculation and guess-work compute the amount of damages sustained. They contend that although plaintiff and other witnesses testified as to the value of the cows which died and as to the weight loss sustained by those which survived and were later sold, that plaintiff testified that he kept a written record of the amount which he obtained for the sale of the cattle; that this record was not produced in court but instead plaintiff testified as to the contents of such record and that plaintiff could not testify as to the contents of that record but must introduce the record itself. Plaintiff testified what the amount received from the sale was; he was not relying on his written memorandum of the sale proceeds to establish his cause of action. At most his written record of the amount received from the sale of the cattle could only have been corroborative of his oral testimony and cumulative. Defendants offered no evidence to contradict plaintiffs' testimony as to the amount of damages sustained. There is sufficient evidence to support the verdict of the jury and the judgment rendered thereon.

Affirmed.

JOHNSON, C. J., WILLIAMS, V. C. J., and DAVISON, HALLEY, BLACKBIRD, and JACKSON, JJ., concur.