**LARCO, INC., Appellant,**

v.

**AIRCRAFTSMEN, INC., Appellee.**

**No. 46170.**

Supreme Court of Oklahoma.

June 18, 1974.

Watts, Looney, Nichols & Johnson by Burton J. Johnson, Oklahoma City, for appellant.

Page Dobson, of Rhodes, Hieronymus, Holloway & Wilson, Oklahoma City, for appellee.

BARNES, Justice:

The Appellant, Larco, Inc., through its sole stockholder, Mr. Ed Riffel, brought this action, as plaintiff, to recover for damages to its Bonanza G–35 Airplane, occurring while it was in the keeping of the Appellee, Aircraftsmen, Inc., hereinafter referred to as "defendant". The plane had been left at the defendant's facility at Wiley Post Airport in Bethany, Oklahoma, around noon on the day of the accident, July 11, 1970. By 1:30 p.m. it was serviced, ready for pickup, and tied down on the ramp in front of the repair hangar. Around 2:00 p.m. a storm warning was received, including the prospect of hail. There were no hangar facilities available for plaintiff's plane in defendant's hangar so arrangements were made by defendant's service manager, William Robert ["Bill"] Williams, to hangar the plane at the Kerr Aviation hangar located in another area of

Wiley Post Airport. The craft was being taxied by one of defendant's employees to the Kerr Aviation hangar when strong winds capsized the plane. The plane sustained the damages resulting in the present action, wherein the jury returned a defendant's verdict.

In this appeal, plaintiff urges error in [1] the trial court's refusal "to permit the plaintiff to show admissions against interest" uttered by defendant's service manager [Williams]; [2] in the verdict being without evidentiary support; and [3] in plaintiff's being precluded from introducing evidence of loss of use of the airplane.

The circumstances under which the proffered testimony was uttered were as follows: Plaintiff's president, Ed Riffel, learned of the accident and went to the airport. There he saw the overturned plane and had a conversation with defendant's service manager, Williams. The trial court sustained an objection to Mr. Riffel's relating what Williams had told him, because "I don't think you have established agency in that there is no evidence that he [Williams] was acting in the scope of his employment." Thereupon, plaintiff made the following offer of proof: "If this witness was allowed to testify, he would state that in his discussion with Bill Williams of what had happened, Bill Williams advised him that they were attempting to taxi the airplane, that it turned over, and that Ed —and that Mr. Rafael should go to the Aircraftsmen's office and sign some papers and get another airplane to replace it." This offer of proof was also rejected. When Riffel's deposition was taken prior to trial, he stated that Bill Williams told him "to go on down to their office and sign the insurance papers, and they'd put me in another plane." Prior to the commencement of the trial, the defendant moved to limit the testimony of Ed Riffel with regard to his conversation with Bill Williams in its entirety, without first showing that it was made within the scope of Bill Williams' employment and for the

further reason that it mentioned insurance. At that time counsel for plaintiff advised the court that there would be no mention of the word "insurance". Accordingly, the offer of proof did not include the word "insurance".

Defendant admitted that Williams was its service manager on the day of the accident, that he was in charge of the airplane at the time of the accident, that the man taxiing the plane was answerable to him, and that he [Williams] answers to nobody in the organization except the executive officers.

Defendant contends, however, that Williams did not have authority to furnish other airplanes to a customer, certainly not to settle a claim for the loss of a plane; and that, therefore, the tendered statement would not be admissible as a statement against interest because it was not shown to be within the scope of his authority or employment.

▮ We agree with defendant and the trial court that statements made by an admitted agent must be shown by competent evidence to be within the scope of the agent's authority before they are admissible. See Pierce Oil Corporation v. Myers, 117 Okl. 161, 245 P. 863 [1926]:

> "Statements, made in the absence of defendant by a person who was not shown to be defendant's agent, cannot bind defendant, and are objectionable as hearsay testimony. Admissions of an agent, in order to be admissible against the principal, must be made as agent, and while he is acting for the principal within his authority; and it must first be shown by competent evidence that such admissions were made in and as a part of the agent's performance of his duties and within the scope of his authority."

▮ Here there was no showing that Williams had authority, express or implied, to replace plaintiff's aircraft.

■ The Williams statement was not admissible for the further reason that, even if it had been shown that Williams had the authority to replace plaintiff's plane, it was not a statement against interest. It was a statement in its original form which indicated that Williams believed that his employer's insurance policy would replace plaintiff's damaged airplane. This was not a statement of fact, but a statement concerning legal rights, and not admissible as a statement against interest. See City of Okmulgee v. Wall, 196 Okl. 536, 167 P.2d 44 [1946], where the court said:

"Generally, a voluntary admission of fact is competent evidence against the party by whom it was made or to whom it is attributable, as a fact tending to show the truth of the statement and the existence of the fact to which it relates. [Citations omitted.] This rule, however, is limited to statements or admissions as to matters of fact. Statements or admissions relative to questions of law are not admissible in evidence, for the reason that a party should not be affected by a statement which may be attributable to a misapprehension of his legal rights."

■ As to plaintiff's contention that the verdict is without evidentiary support, we have examined the record and found ample competent evidence to support the verdict and judgment in conformity therewith.

It is not necessary to discuss plaintiff's third proposition concerning one facet of its alleged damages since we have sustained the verdict and judgment exonerating defendant generally from damage liability.

In accord with the foregoing, we grant certiorari, reverse the decision of the Court of Appeals, and affirm the judgment of the trial court.

All Justices concur.