judge presiding found the evidence sufficient upon which to base a verdict. Under the circumstances, we are not satisfied of reversible error in the refusal to grant a new venire.

All the assignments are overruled and the judgment is affirmed.

---

## Schotter, Appellant, *v.* Carnegie Steel Co.

*Contract—Master and servant—Compensation—Allotments of stock—"Voluntarily quit" employment.*

1. Where a contract of employment between a corporation and one of its employees provides that the employee should have the right to participate as "special compensation to employees under bonus plan," in allotments of stock, but that this right should be forfeited if the employee should voluntarily quit the company's service within five years, the right is forfeited if the contract of employment is terminated by mutual consent within five years.

2. To "voluntarily quit" the employment, means to quit without coercion or compulsion.

Argued October 18, 1921. Appeal, No. 197, Oct. T., 1921, by plaintiff, from judgment of C. P. Allegheny Co., July T., 1919, No. 1402, on verdict for defendant, in case of H. I. Schotter v. Carnegie Steel Co. Before FRAZER, WALLING, SIMPSON, KEPHART and SCHAFFER, JJ. Affirmed.

Assumpsit for breach of contract.

Verdict for defendant by direction of court.

On a motion for a new trial, the following opinion was filed by CARPENTER, J.:

"A verdict for defendant having been rendered pursuant to instructions, the plaintiff moves for a new trial. The controlling facts are not disputed, and, for the purposes of the present discussion, we might exclude all testimony offered by defendant. The plaintiff did not attempt to color or conceal any material fact for the

purpose of strengthening his case. Briefly stated, his claim is that he held a position as employee of the defendant which entitled him to a bonus in addition to his salary. He avers that under the allotments of stock as 'special compensation under bonus plan,' he became entitled to stock which was not delivered and which is of great value. The allotments had certain conditions attached thereto, only one of which, the third, is here involved. This condition provided, inter alia, that if the person to whom was allotted the bonus mentioned should 'voluntarily quit' the employment of the company within a period specified [the figures show, and it is agreed, the period was five years] he should forfeit all right to the bonus stock. It is admitted that plaintiff did not remain with defendant for the five years next following the dates on which the provisional certificates, showing his allotment, were issued; that he severed his connection with defendant company and entered the service of Midvale Steel & Ordnance Corporation, and that he subsequently returned his provisional certificates to defendant.

"Plaintiff's counsel states his contention as follows: 'The plaintiff contends that he did not "voluntarily" quit the employment of defendant so as to effect a forfeiture of his stock under the terms of the allotment, but that his employment was terminated by mutual agreement with defendant, and that his right to the stock was thereby not affected.'

"That the testimony shows conclusively a termination of the employment by mutual consent cannot be doubted. It is undisputed that after Mr. Dinkey of the Midvale Company offered the plaintiff a position in that company, he, Mr. Schotter, talked with Mr. Williams of the Carnegie Company. His own statement of the conversation, given in answer to a question requesting him to state all that transpired, was:

" 'The outcome of the conversation was, of the mutual conference we had, that Mr. Williams, as I say, stated

as a friend and as an official, he didn't see—he simply advised, in other words [this] is what I say,—he simply advised that under all the circumstances [I] accept the position offered. However, I said, "Now, Dan, as a friend and as an official of long connection with the Carnegie Steel Company, if you wish me to stay, I am perfectly willing, because, I repeat, I am not so sure that I want to sever connection with the Carnegie Steel Company, or I will stay as long as you would like me to." He said, "You can arrange at any time that you care to," and asked me who I would advise becoming my successor in the position as general superintendent of the city mills.'

"On cross-examination he testified as follows: 'I consulted Mr. Williams first before I left because I was not sure that I wanted to leave the Carnegie Steel Company, and it was only after consulting and his advice to me that he certainly would accept the position had it been offered him and under those circumstances did not see how I could do anything else but accept the position and it would be perfectly satisfactory to him. So it was by mutual consent that the connection was severed.'

"Other evidence to the same effect might be quoted, but we deem it unnecessary.

"It is earnestly contended by plaintiff's counsel that the evidence does not warrant the conclusion that plaintiff 'voluntarily quit' his employment with defendant, and he quotes numerous definitions of both words, to sustain his contention. To 'quit' the service of another means to abandon it, and to do so 'voluntarily' means to quit without coercion or compulsion. To say that because a man hesitates, seeks advice, before acting, he does not act voluntarily, is to say that if he thinks before he acts he is not responsible for the consequences. The very fact that he hesitates negatives the idea that his act was without consideration, was not voluntary. We are unable to find any evidence which lends even slight support to plaintiff's contention.

"New trial refused."
Judgment for defendant. Plaintiff appealed.

*Error assigned* was direction of verdict for defendant, quoting record.

*U. G. Vogan,* with him *C. F. Patterson,* for appellant.

*David A. Reed,* of *Reed, Smith, Shaw & Beal,* for appellee, was not heard.

PER CURIAM, January 3, 1922:
The judgment in this case is affirmed on the opinion of the learned judge of the court below.

---

# Butler County National Bank *v.* St. Michael's Greek Catholic Church.

*Mortgage—Bond—Judgments—Assignments—Petition to compel assignment.*

A bank holding a mortgage, bond and two junior judgments against a corporation, will not be compelled to assign them, in payment of the mortgage debt and interest thereon, to certain parties, who deny the validity of the two judgments, where other parties interested in the church offer to pay the entire indebtedness of the church, including the two judgments. '

Argued October 20, 1921. Appeal, No. 37, Oct. T., 1921, by Rev. Peter Poniatishin, from decree of C. P. Butler Co., Sept. T., 1920, No. 82, dismissing petition for an order to assign to petitioner a mortgage and bond, in case of Butler County National Bank v. St. Michael's Greek Catholic Church et al. Before MOSCHZISKER, C. J., FRAZER, WALLING, SIMPSON, KEPHART, SADLER and SCHAFFER, JJ. Affirmed.

Petition for order to assign mortgage and bond. Before REIBER, J.