**WESTERN STEEL ERECTION COMPANY,**
an Oklahoma Corporation, Plaintiff
in Error,

v.

**C. L. GATLIN,** Defendant in Error.
No. 37693.

Supreme Court of Oklahoma.

Dec. 17, 1957.

Ames, Daugherty, Bynum & Black, Oklahoma City, for plaintiff in error.

Claude E. Love, and Schwoerke & Schwoerke, Oklahoma City, for defendant in error.

BLACKBIRD, Justice.

This appeal involves an action instituted by defendant in error, as plaintiff, to recover from plaintiff in error, his former employer, as defendant, the sum of $490 in wages and transportation expenses allegedly due him under an "Employment Agreement" entered into July 25, 1955, at Oklahoma City. Said "Agreement", or contract, was apparently on the same form used generally by said employer in the hiring of other sheet metal workers in the United States to perform its part of the construction of an air field in Newfoundland for, or under the supervision of, the United States Government. Under said contract, which referred to him as the "Employee" and to defendant as "Contractor", plaintiff's rate of pay was $3 per hour; and the contract provided, among other things, in substance, that he would be paid "travel pay" equal to five hours of regular pay, at said hourly rate, for each day that elapsed between the effective date of said contract and his arrival at the job site, and from the time of his departure from said job site until the estimated date of his arrival back at the place where he was hired (Oklahoma City) usually referred to in the contract as "Point of Hire."

In the present case, it was established, without contradiction, that said plaintiff's travel time in going from Oklahoma City to, and returning there from, the job site in Newfoundland (by air) was three days each way, or a total of six days.

No definite term of employment was specified in the contract unless it could be inferred from the fact that the only manner provided therein for the employee to terminate the employment was by giving the employer fifteen days notice, *after six months* continuous employment at the job site. In its Section 6, the contract provided that defendant's payment to plaintiff of his transportation costs from the point of his departure in the United States to the job site, and such costs of his return journey, would be made "upon completion of service." Apparently to guard against any such employees being "stranded" in Newfoundland by lack of funds to defray the cost of the return journey, the contract also provided for the creation of what was therein termed a "Return Transportation Fund", by defendant's withholding from the employee's pay a sum not to exceed 20% of his weekly wages from the time of his departure for the job site, until the accumulation, by this method, of the sum of $400.

In its "Section 9(b)", the contract further provided that if the employee's employment was terminated by the employer prior to completion of his "period of service" thereunder, for reasons other than such as were described in Section 10 of said contract, as being "for cause", then the above mentioned transportation fund was to be paid upon such termination. The contract also provided that if the employee "quit", or was "discharged for cause", prior to completion of his "period of service", then the employer, or "contractor" should apply such fund to the payment, on behalf of

the employee, of his costs of living, transportation and other expenses incidental to the employee's return to the "Point of Hire."

After arriving at the job site in Newfoundland, plaintiff was there until early in September, 1955, before he returned to Oklahoma City. During that part of said period for which plaintiff was paid, a portion of his pay each week was withheld to form the "Return Travel Fund" contemplated in the aforedescribed contract. This action, instituted after his return, was to recover this travel fund, and the aforedescribed pay for his travel time of six days, to the job site and back, at $15 per day.

On the basis of the theories presented by the parties, both at the trial without a jury and in this appeal, plaintiff's entitlement to this money under the contract depends upon his having neither "quit", nor been "discharged for cause", within the meaning of those terms as used in said contract. After hearing the evidence, the trial court held that plaintiff's employment was terminated in neither of these two ways; and, by his judgment, plaintiff recovered the full amount sued for. After the overruling of its motion for a new trial, defendant perfected this appeal.

The only direct evidence of the circumstances under which plaintiff's employment in Newfoundland was terminated is found in the testimony of plaintiff himself and Mr. Haun, defendant's superintendent. There is no substantial conflict in their testimony and it reasonably tends to show the facts hereinafter related. On a Saturday, which apparently was September 3, 1955, plaintiff began suffering a toothache, and told Haun he was going to a dentist that evening. During his visit to the dentist, the abssessed tooth causing his pain, was treated so it would drain; but, for the two days following, plaintiff still had pain and did not report back to Haun for work until the Tuesday thereafter. When he did so, Haun, whom he encountered at defendant's tool shed, asked him if he "would like to come home", and plaintiff replied: "I would like it."

Then, according to plaintiff's testimony, Haun said: "Well, go pack your clothes. I am going to try to make your reservation for to-night." It was through the transportation arrangements Haun thus indicated he would make, that plaintiff's journey back to Oklahoma City was accomplished.

There is no conflict in the testimony to cast any doubt on the correctness of the trial judge's conclusion that plaintiff was not discharged for cause. As witnesses, both plaintiff and defendant seemed to have agreed that he was not, though Haun's testimony seems to indicate that if plaintiff, on the above-described occasion, had not indicated a willingness to come home, he would have complained to him about certain defects in his work and would have given him an opportunity to correct them before deciding whether or not to discharge him.

The only finding or conclusion of the trial court that defendant herein specifically attacks is the one that plaintiff did not "quit" the job. The only cases its counsel cite in support of such argument are Schotter v. Carnegie Steel Co., 272 Pa. 437, 116 A. 358, and International Ass'n of Machinists v. State, 153 Fla. 672, 15 So. 2d 485, 490. In our opinion, neither of these decisions is applicable here. The only part of the first one that could be claimed to support defendant's argument is a reference to the United States Labor Statistics Bureau's definition of the term "quit", as a "termination of employment by the worker because of his desire to leave, * * *". In the first cited case, the court held:

"Where an employee of a corporation to whom stock has been conditionally issued as a bonus, under an agreement that if he voluntarily quit employment within five years he should forfeit the right to the stock, left the employment within that period by mutual agreement with his employer, he 'quit' the employment so as to lose his right to the stock, since to 'quit' means to abandon, and to do so voluntarily

means to quit without coercion or compulsion."

From the facts of the above-quoted case it appears that the employment there involved was terminated solely on the initiative of the employee himself, and that, though his decision to quit was probably influenced by the advice of one of his employer's officials, it was solely a unilateral decision, neither initiated, nor effected, through any action of the employer. Here the termination of plaintiff's employment may be regarded as bilateral. While, precisely speaking, it may not have been compelled, or coerced, by the employer's agent Haun, we think the least that can be correctly said of it is that it did not come about wholly because of plaintiff's desire in the matter. It is not going beyond the realm of reasonable inference to conclude, from the evidence, that the termination of plaintiff's employment was desired by said agent and that he took the initiative in obtaining fulfillment of this desire. We think the termination of plaintiff's employment might more accurately be called a "mutually-agreed-upon release" from duty, rather than a "quit", which latter term, as used in the contract, certainly did not contemplate any element of consent by the employer, since, by the terms of the travel provisions therein, only the employee was to be penalized by such termination (in the forfeiture of funds, which otherwise, under the contract, rightfully belonged to him). The present case, being an action at law, in which jury trial was waived, the judgment therein has the same conclusiveness as if it had been entered in accord with a verdict. As held in New York Life Ins. Co. v. Razzook, 178 Okl. 57, 61 P.2d 686, 688:

"Where a jury is waived, the findings of the court are entitled to the same weight and consideration that would be given to a verdict by a jury, and, if there is any evidence, *including any reasonable inferences,* tending to support the findings, the Supreme Court will not reverse for insufficient evidence." (Emphasis ours.)

And, in such a case, as said in Mann v. Welch, 208 Okl. 580, 582, 257 P.2d 1074, 1076: "* * * it is not our province to weigh the evidence as between any conflicting inferences that might be drawn therefrom." In view of the foregoing, even though we were disposed to differ with the trial judge's inferences from the testimony, in concluding that the termination of the employment here involved was not a "quit" within the meaning of that term, as used in the contract, still, as it cannot be said that such conclusion is not a reasonable, or justifiable one from the evidence, it, and the judgment based thereon, must stand. Said judgment is accordingly affirmed.

CORN, V. C. J., and HALLEY, JOHNSON, WILLIAMS, JACKSON and CARLILE, JJ., concur.

DAVISON, J., dissents.