## Batipps v. Chester County Board of Health

*W. Richard Gentry*, for appellee.

*William J. C. O'Donnell*, for appellant.

SHELLEY, J., Specially Presiding, February 2, 1972.—This matter is before the court on the rule of the above-named appellant entered against the Chester County Board of Health (board) to show cause why appellant should not be reinstated as an employe of the board with back pay from the date of the termination of his employment.

In his appeal petition, appellant avers that his employment as a supervising sanitarian was terminated by the board on June 30, 1971, because of his residency in Delaware County.

The board denies the allegation and avers that on June 7, 1971, appellant submitted a letter of resignation to the Personnel Manager of Chester County.

Appellant filed an appeal with the board which was overruled by the board on September 8, 1971, and his termination of employment was approved. Appellant

then filed an appeal to this court wherein he alleged that his employment was terminated "solely because appellant was a resident of Delaware County, a requirement nowhere contained in any regulation of the Board, nor policy regularly or properly adopted by the Board." The rule was issued pursuant to the appeal petition. The board filed an answer to the petition for rule.

On December 1, 1971, appellant filed a motion to strike appellee's answer for the reason that an answer was not filed until about two weeks after the return date of the rule and was not served on appellant until about one month later.

On December 20, 1971, the parties entered into a stipulation wherein it was agreed that the notes of testimony taken at the hearing before the board "be considered the record" in this appeal.

The sole issue in this case is whether or not appellant resigned his position with the board or, to put the question another way, was appellant's employment terminated by the board for his failure to move his residence from Delaware County to Chester County.

Appellant became a board employe in July 1968, when the board was first organized. In January 1970, he was promoted to a permanent appointment as a supervisory sanitarian. His services were "quite satisfactory."

At the hearing before the board, the director and appellant each testified as to their respective version of the matters which lead up to the termination of appellant's employment with the board.

The director testified as follows:

"DR. BENDER: Gentlemen, I will testify in my own behalf.

"It seems to me I have two points at this juncture to make.

"Certainly we were mindful of the difficulties that Mr. Batipps may encounter, may have encountered in finding suitable living arrangements, and I think this explains, in part, the fact that three years have expired since his initial appointment to the Department.

"We did try to be reasonable in the enforcement of what I believe is a proper requirement, that the employees of the Chester County Health Department reside within the jurisdiction of the Department, at least within the county, certainly, in which the appointment is established.

"I mention this first because I think in our discussions—that is my discussions with Don—that I did recognize the fact that he would have some—he may be having some special difficulties in finding suitable living arrangements.

"However, I do feel very certain that Mr. Batipps and I had agreed that he would move to Chester County, into Chester County, within a reasonable time of his appointment. There is no such agreement in writing, but there is allusion to it in that one letter which is in evidence.

"So, point No. 1 is confidence between men.

"Point No. 2 is my interpretation of the section 8 rule, Part A.* I believe that residence in this context is properly interpreted as Chester County. And this is my policy, as administrator of the Department, and I think the reasons for it are sound. A major advantage to a County Department of Health is to have locally oriented responsive personnel that relate to their com-

---

* "Section 8. Politics and Religion. A. Discrimination. The County Health Director shall not discriminate against or in favor of any applicant or employee because of race, residence, or political or religious opinions or affiliations."

munity, and in fact, are responsive *to it*. And accountable to the community.

"I would like to admit that Mr. Batipps' service was quite satisfactory, as evidence would suggest, and that his termination, although not in writing, I did not come to that point, Mr. Batipps admitted that a letter —not to me, but to Mr. Semelsberger—a letter of resignation.

"I was not moved to the point of giving him a letter of termination because I felt that we were shooting for July 1st, but I felt that this could be flexible, within a month or two, pending his securing of a suitable position.

"I think that is the essence of my position in the matter.

"DR. HANSON: Do you routinely inform people who come to work for you that they are expected to move into the county within a reasonable period?

"DR. BENDER: Yes, sir.

"DR. HANSON: And has everyone now working for you done so?

"DR. BENDER: Not everyone.

"DR. HANSON: Are the ones who have not planning to do so, as far as you know?

"DR. BENDER: As far as I know, or be terminated.

"DR. DAVIES: You did say there was an agreement by Mr. Batipps that he would?

"DR. BENDER: I have the impression there was that agreement.

"DR. DAVIES: Do you have that impression, Mr. Batipps?

"MR. BATIPPS: If I recall the way he phrased it at the pre-employment interview was, do you intend to move to Chester County, and I stated at that time, yes.

"DR. HANSON: There were further conversations,

I gather, between the spring of 1968 and December, 1970, on this matter?

"DR. BENDER: Yes."

Appellant testified as follows:

"Q. Now, may I ask you, when was your last day of employment with the department?

"A. The 30th of June, 1971.

"Q. Did the department submit anything to you in writing or did you submit anything in writing concerning that termination?

"A. I submitted a letter.

"Q. Okay, do you have a copy of it?

"A. Yes, I believe—(producing letter).

"Q. This appears to be a copy of a letter written to Mr. Samuel Semelsberger, Personnel Director, Chester County Courthouse, and it is dated June 7, 1971?

"A. That is correct.

"Q. Reading it into the record:

"Dear Mr. Semelsberger:

" 'In compliance with the County Health Director's verbal order of December, 1970 that I establish residence in Chester County by July 1, 1971 or be terminated, please be advised that is impossible for me to relocate. Further, it is not conceivable that I will be able to comply in the foreseeable future.

" 'My last day of work will be June 30, 1971.'

"Q. Did you write that letter?

"A. I did.

"Q. And did you mail it to Mr. Semelsberger?

"A. I did.

"Q. And pursuant to that letter, was your last date of employment actually June 30, 1971?

"A. Yes.

"Q. Okay, will you tell us, please, in your own words, what led up to your writing that letter?

"A. Well, that was a meeting I had with Dr. Bender in December of 1970.

"Q. What transpired at that meeting?

"A. Well, again, this was—I think we had met several other times regarding this same situation, but—

"Q. Well now, let's see if we could just back up: When do you recall the first time that you and Dr. Bender met together on the subject of the December meeting and your later termination?

"A. Well, I suppose it was during the pre-employment interview, the first time that I can recall.

"Q. When was that? You mean back in 1968?

"A. That is right.

"Q. Okay, go ahead.

"A. And I recall again in December of 1970 I was—I think one other time prior to that—I don't recall the date.

"Q. Okay, well what happened then in December of 1970? Tell us about that in your own words.

"A. Like he told me that I would have to either move to the county by July 1 or be terminated. Of course, he was willing to work out an extension, so I said, well, what is the sense of prolonging this thing? I am going to have to face it sooner or later, so I will comply; I will either be in touch with counsel or else I will no longer be an employee as of that date.

"Q. Did you have occasion to discuss the matter further with Dr. Bender or with anyone else in authority?

"A. Yes, well he told me he would advise me of the results of that, what he had told me in December in writing, and I never got it, and several months later, like in March, I think it was in March, I had asked him about it, and because I had wanted the opportunity

to work with a replacement if they were going to replace me, and I didn't want to wait until the last minute.

"But I never got the letter. So came June 30, and I left.

"Q. And that is what prompted you to write this letter, is that right?

"A. Yes.

"Q. Now, did—was that made to you merely in the form of a suggestion or was it made to you in the form of a definite instruction?

"A. Well, the last time I interpreted it as being more or less an actual ultimatum, really; but before it kind of had the tone of suggestion.

"Q. You are talking about in your pre-employment interview?

"A. Yes, it is so stated in the letter that I have.

"Q. Now, may I ask you if there is anything, to your knowledge, in the rules and regulations of the Pennsylvania Department of Health regarding the residence of employees, professional employees?

"A. Yes, what—I think it is section 7—states that you shouldn't discriminate against anybody for race, religion, or residence.

"Q. Did you point that out to Dr. Bender?

"A. I don't think so."

To voluntarily quit employment means to quit without *coercion* or *compulsion*: Schotter v. Carnegie Steel Co., 272 Pa. 437 (1922). (Italics supplied.)

The word "compulsion" is synonymous with the word "coercion" and means, in general, some actual or threatened exercise of some possessed or supposed-to-be possessed authority by the party exercising the authority and from which there is no means of imme-

diate relief: Lehigh Coal and Navigation Company v. Brown et al., 100 Pa. 338, 346 (1882).

"Compulsion" according to Black's Law Dictionary means: constraint; objective necessity; duress; forcible inducement to the commission of an act, citing Lehigh v. Brown, supra.

"Coercion" according to the same authority means compulsion; force; duress; that the relation of the parties is such that one is under subjection to the other and is thereby constrained to do what his free will would refuse.

There is no doubt that the director of the board did use emphatic persuasion to have appellant move his residence into Chester County but the conduct of the director did not amount to an ultimatum that the employment of appellant would actually be terminated if he did not comply with the director's suggestion.

Persuasion is not coercion: Van Valkenburgh v. Oldham, 12 Cal. 572, 108 P. 42-44; (Dist. Ct. App. 1910); 7-A Words and Phrases, 109. "Persuasion" is defined in Black's Law Dictionary as "the act of influencing the mind by arguments or reasons offered, or by anything that moves the mind or passions, or inclines the will to a determination."

Accordingly, we conclude that appellant's motion to strike and his rule to show cause must be denied and we make the following

## ORDER

And now, February 2, 1972, appellant's motion to strike off appellee's answer and his rule to show cause why appellant should not be reinstated with back pay to the date of his determination is denied. Costs to be paid by appellant.